ATTORNEY FOR APPELLANT
John A. Goodridge
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ann L. Goodwin
Deputy Attorney General

Gary R. Rom
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

### No. 82S01-1106-CR-328

LISA GRAY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Vanderburgh Superior Court, No. 82D05-0809-CM-6587
The Honorable Allen R. Hamilton, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A01-1005-CR-223

**November 22, 2011**

**Shepard, Chief Justice.**

A trial court found Lisa Gray guilty of possessing marijuana as a class A misdemeanor, but the Court of Appeals set aside the conviction on the grounds of insufficient evidence. We have accepted jurisdiction to reinstate the judgment.

**Facts and Procedural History**

On the evening of September 7, 2008, Officers Robert Pylant and Jason Clegg of the Evansville Police Department arrived at Lisa Gray's apartment. Gray answered the door and stepped out onto the porch to speak to the officers. (Tr. at 8, 16.)

The officers explained they were there to investigate a report of marijuana being dealt from Gray's apartment and asked for her permission to search it. (Tr. at 9, 15.) Gray initially reacted with shock. (Tr. at 9.) Officer Pylant later testified that he thought he asked Gray whether anyone else was inside, and that Gray told the officers that her son D.H. and two of his friends were inside. (Tr. at 17.)

The conversation lasted about five minutes. (Tr. at 9, 13, 16.) During the conversation, the officers could see through the screen door into the living room of Gray's apartment. (Tr. at 16–17.) They could also see a coffee table about eight to ten feet from the door. (Tr. at 18.) But the officers did not see anyone moving around by the coffee table. (Tr. at 17–18, 20.) Gray signed a written consent form allowing the officers to search her apartment. (Tr. at 9.)

On entering the apartment, the officers found two boys, both fourteen years old, sitting in the living room on a couch next to the coffee table. (Tr. at 9–15.) Both boys said they were visiting D.H., who was fifteen. (Tr. at 11, 24.) D.H., however, was not in the apartment when the officers entered. (Tr. at 40, 45.) Officer Clegg later testified that Gray told the officers that D.H. was elsewhere in the apartment complex. (Tr. at 17, 46.)

The officers also noticed a small bag of marijuana sitting on the floor under the coffee table. (Tr. at 10, 12.) Officer Pylant later testified that the bag appeared to be "in plain view" and contained a "gray leafy substance." (Tr. at 10.) The marijuana later tested positive for tetrahydrocannabinol (THC) and weighed about 4.5 grams. (Tr. at 10, 12.) Gray and both boys denied owning the marijuana. (Tr. at 11.)

About halfway through the officers' investigation, Officer Clegg noticed D.H. enter the apartment through the front door. (Tr. at 45.) Officer Pylant did not notice D.H. until D.H. appeared behind Officer Pylant asking what was going on. (Tr. at 41, 43.) At that point, the officers explained the situation to him. (Tr. at 41.)

Officer Pylant cited Gray for possessing marijuana and issued her an information and summons ordering her to appear in court. (App. at 9.) The case went to a bench trial in April 2010. (Tr. at 4.) Gray moved for a judgment on the evidence at the close of the State's case-in-chief, but the trial court denied the motion. (Tr. at 22.)

In Gray's defense, both Gray and D.H. testified that D.H. was sitting on the couch with his two friends when the officers entered the apartment. (Tr. at 25–26, 49–50.) Gray further testified that she later learned the marijuana belonged to D.H. (Tr. at 26–27.) D.H. likewise testified that the marijuana belonged to him, adding that he got scared and threw it under the table when the officers arrived. (Tr. at 38.) On cross-examination, Gray acknowledged that the police report did not even list her son as being present even though the report did list the names of his two friends. (Tr. at 27–28.) The State recalled both officers as rebuttal witnesses to establish that D.H. was not present when the officers entered, and the defense recalled both Gray and D.H. to contest this point. (Tr. at 41, 45–46, 49–50.)

Immediately after placing D.H. under oath and before allowing any questioning, the trial court inquired whether D.H. had spoken to a lawyer and understood his rights, as it appeared D.H. was about to admit to a criminal offense. (Tr. at 29.) Gray's lawyer acknowledged that his intention in calling D.H. was to elicit just such an admission on the stand but that D.H. had not spoken to a lawyer. (Tr. at 29.) The court advised D.H. of his rights. (Tr. at 30, 35–37.) As Gray's lawyer further questioned D.H. about whether D.H. understood his rights, the court broke in to admonish Gray:

> THE COURT:     Ma'am, don't shake your head yes or no. He is to answer.

3

MS. GRAY:          Okay.

THE COURT:          Not based on how you nod your head.

MS. GRAY:          Okay, thank you.

(Tr. at 31.)   When D.H. stated that he wanted to speak to a lawyer, the court ordered a continuance so D.H. could speak to a lawyer the court appointed for him.  (Tr. at 31–33.)

After the trial finally came to a close, the court found Gray guilty of possessing marijuana and imposed a sentence of ninety days suspended time, a $10 fine, court costs, and a $200 drug interdiction fee.  (Tr. at 51–52.)   Gray appealed, arguing that the evidence was insufficient to support her conviction.  (Appellant's Br. at 4.)   The Court of Appeals reversed.  Gray v. State, 944 N.E.2d 527 (Ind. Ct. App. 2011).  We granted transfer, vacating the opinion of the Court of Appeals.  Gray v. State, 950 N.E.2d 1211 (Ind. 2011) (table).

**Standard of Review**

When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt.  Drane v. State, 867 N.E.2d 144 (Ind. 2007).  We likewise consider conflicting evidence in the light most favorable to the trial court's finding.  Wright v. State, 828 N.E.2d 904 (Ind. 2005).   It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence.  Drane, 867 N.E.2d at 147.  Instead, we will affirm the

4

conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt. Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000).[1]

**Constructive Possession**

A person commits possession of marijuana as a class A misdemeanor if she knowingly or intentionally possesses marijuana. Ind. Code § 35-48-4-11 (2008). A person actually possesses contraband when she has direct physical control over it. Henderson v. State, 715 N.E.2d 833 (Ind. 1999). But a conviction for a possessory offense does not depend on catching a defendant red-handed. Wilburn v. State, 442 N.E.2d 1098 (Ind. 1982).

When the State cannot show actual possession, a conviction for possessing contraband may rest instead on proof of constructive possession. Goodner v. State, 685 N.E.2d 1058 (Ind. 1997). A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. Lampkins v. State, 682 N.E.2d 1268, 1275 (Ind.), modified on reh'g, 685 N.E.2d 698 (Ind. 1997).

---

[1] Gray argues that her conviction lacks the support of sufficient evidence because the evidence merely tends to support the conviction but does not do so beyond a reasonable doubt. (Appellant's Br. at 4.) (citing Vuncannon v. State, 254 Ind. 206, 258 N.E.2d 639 (Ind. 1970); Gaddis v. State, 253 Ind. 73, 251 N.E.2d 658 (Ind. 1969); Liston v. State, 252 Ind. 502, 250 N.E.2d 739 (Ind. 1969)). We view Gray's characterization of our standard of review as an invitation to reweigh the evidence. All an appellate court may determine is whether the evidence introduced at trial was substantial and had probative value. See Drane, 867 N.E.2d at 147. The cases Gray cites held that indefinite, vacillating, or coerced testimony was neither substantial nor probative, Vuncannon, 254 Ind. at 207–09, 258 N.E.2d at 640; Gaddis, 253 Ind. at 77–80, 251 N.E.2d at 660–62, and that the State must introduce substantial evidence of probative value that speaks to each element of an offense, Liston, 252 Ind. at 509–12, 250 N.E.2d at 742–44. No reasonable trier of fact would find the elements of crime beyond a reasonable doubt by relying on "evidence" that failed to satisfy either holding.

A trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item. Gee v. State, 810 N.E.2d 338, 340 (Ind. 2004) (citing Davenport v. State, 464 N.E.2d 1302, 1307 (Ind. 1984)). We allow this inference even when that possessory interest is not exclusive. Id. at 341.

A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive. Id. When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item. Id. We have previously identified some possible examples, including (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns. Id. (citing Henderson, 715 N.E.2d at 836); see also Carnes v. State, 480 N.E.2d 581, 586 (Ind. Ct. App. 1985) (list not exhaustive as other circumstances could just as reasonably demonstrate requisite knowledge).

A defendant's "proximity to contraband 'in plain view' . . . will support an inference of intent" to maintain dominion or control. Lampkins, 682 N.E.2d at 1276 (citing Young v. State, 562 N.E.2d 424 (Ind. Ct. App. 1990); Smith v. State, 505 N.E.2d 81 (Ind. Ct. App. 1987); Watt v. State, 412 N.E.2d 90 (Ind. Ct. App. 1980)). In addition to being in plain view, however, the contraband's incriminating character must be immediately apparent. Lampkins, 685 N.E.2d at 700. Whether the incriminating character of contraband was immediately apparent depends on an analysis similar to the one we use to determine the admissibility of evidence seized in a warrantless search under the plain view doctrine. See id. (citing Minnesota v. Dickerson, 508 U.S. 366 (1993)); see also Dickerson, 508 U.S. at 374–75 (evidence admissible if officers lawfully in position to view item, incriminating character immediately apparent, and officers had

6

lawful right of access to item). It does not take much to recognize the incriminating character of marijuana.

To be sure, finding contraband hidden from plain view on premises in which a defendant has a nonexclusive possessory interest when the defendant was not even present will not, without more, support a conviction on a theory of constructive possession. Gee, 810 N.E.2d at 343. In Gee, officers searched a residence the defendant and his cousin leased but which the defendant used only rarely. Id. at 340. The officers found drugs and paraphernalia largely hidden from view in closed containers and bags in a basement laundry room. Id. There were no other additional circumstances pointing to the defendant's knowledge of the presence and the nature of the items. See id. at 343–44. On appeal, we reversed the defendant's conviction, finding that the incriminating character of the contraband was not immediately apparent. Id. at 342–44.

Here, there is no dispute that Gray had a possessory interest in the apartment, which is sufficient to establish her capability to maintain dominion and control over the marijuana. The evidence at trial, if credited, supplied additional circumstances that, combined with her possessory interest in the apartment, sufficiently establish her intent to maintain dominion and control over the marijuana. The officers testified that the coffee table in Gray's living room was about eight to ten feet away from the door. Gray was present when the officers later found the marijuana under the table in plain view. Because the officers did not see any movement around the coffee table while they were speaking to Gray on the front porch, the trial court could reasonably have found that Gray was in close proximity to the marijuana while it was in her plain view before answering the door and stepping out onto the porch to speak with the officers.

Moreover, there is sufficient evidence in the record that the incriminating character of the marijuana was immediately apparent. Officer Pylant testified that he could see a gray leafy substance in the bag. This was not a situation in which someone had deliberately concealed contraband in closed containers and bags in a basement room. Cf. Gee, 810 N.E.2d at 340. The trial court could have found that Gray would have immediately realized that the substance was marijuana on seeing it and therefore had knowledge of its presence and its nature. It could

7

therefore reasonably infer that Gray intended to maintain dominion and control over the marijuana based on the evidence the State presented in its case-in-chief.

Finally, the evidence Gray presented in her defense, when viewed in the light most favorable to the trial court's finding, only further supports that finding.[2] Gray and D.H. both testified in Gray's defense that D.H. was present in the apartment and that he was sitting on the couch with his two friends when the officers entered. D.H. further testified that he got scared and threw the bag of marijuana under the coffee table. The officers, however, both testified that D.H. was not present at all, making that action impossible. The State called both officers as rebuttal witnesses to establish this point, and the defense called both Gray and D.H. as rebuttal witnesses to contest this point.

The trial court was also entitled to take into account the manner in which Gray presented her evidence. Although D.H. testified only after having spoken to a lawyer and waiving his rights, Gray's lawyer first called D.H. to the stand without having advised him of his right to independent counsel, to have a lawyer present while testifying, or not to testify against himself at all. The fact that Gray appeared to be signaling her son on how to answer when her lawyer asked D.H. about whether he understood his rights illustrates rather dramatically the reason appellate courts defer to a trier of fact who saw and heard the witnesses.

Charged with the assignment of determining whose testimony to believe, the trial judge obviously found the officers more credible than Gray and her son. This constituted substantial evidence of probative value from which the court could have found beyond a reasonable doubt that Gray committed the crime.

---

[2] We consider this evidence because Gray challenges the sufficiency of the evidence supporting her conviction, not the trial court's decision to deny her motion for judgment on the evidence. The hornbook law of Indiana Trial Rule 50(A)(6) holds that a party waives any error of the trial court's in denying a motion for judgment on the evidence whenever the party subsequently presents her own evidence.

**Conclusion**

We therefore affirm Gray's conviction.

Dickson, Sullivan, Rucker, and David, JJ., concur.