**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ZACHARY A. WITTE**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT D. ROGERS, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1204-CR-211 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D06-1201-FC-10

**December 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Robert D. Rogers, Jr. appeals his conviction of Failure to Register as Offender,[1] elevated to a class C felony as a result of a previous conviction for failure to register.[2] Rogers challenges the sufficiency of the evidence as the sole issue on appeal.

We affirm.

The facts favorable to the conviction are that on February 17, 1999, Rogers pled guilty to child molesting, a class B felony, resulting in his classification as a sexually violent predator and giving rise to the requirement that he register as a sex offender. In 2009, he pled guilty to failure to register as an offender, a class D felony, and was sentenced to three years in prison.

Michael Smotherman is an officer in the Sex and Violent Offender Registry (SORN) division of the Allen County Sheriff's Department. On January 9, 2012, Rogers contacted Smotherman and asked about the due date for Rogers's next registration. Smotherman told him that his due date, January 3, had already passed. Smotherman told Rogers "to come on into the office and we'd get him taken care of even though he was late, he would not be in any trouble if he just came in and just got it taken care of." *Transcript* at 7. Rogers's brother, Joseph, drove Rogers to the office so he could register. Joseph walked with his brother to the SORN office. When Rogers arrived, Smotherman was conducting registration with another offender. Smotherman acknowledged Rogers and asked him to have a seat and told him he would process his registration when Smotherman was finished with the other

---

[1]  Ind. Code Ann. § 11-8-8-17 (West, Westlaw current through 2012 Second Regular Session).
[2]  *See* I.C. § 11-8-8-17(b)(2).

2

offender. Rogers sat down briefly, but then began pacing back and forth. Rogers advised Smotherman that he was going upstairs to smoke a cigarette and that he would return. Joseph and Rogers went outside and smoked. Once there, it became clear to Joseph that Rogers was not going to follow through with the registration process. Joseph believed Rogers was afraid they were going to lock him up. Joseph attempted to persuade Rogers to go back inside and register, but Rogers refused to relent. Joseph then drove the two of them home. Meanwhile, approximately fifteen minutes after Rogers left the office, Smotherman finished with the other offender and attempted to locate Rogers. He was not successful.

The next day, Smotherman telephoned Rogers's home and spoke with a woman claiming to be Rogers's mother. She told him Rogers was not at home. Smotherman told the woman that Rogers would not be in trouble and would not be arrested as long as he completed his registration requirement. Rogers did not report to the Sheriff's Department on that day. The following day, January 11, Smotherman and Officer Jeffrey Shimkus drove to Rogers's home to inform him that he needed to complete his registration requirement. He was not there the first time, but when they went to the house a second time that day, they found Rogers in a chair in the living room of his mother's home, curled-up in a fetal position. Smotherman told Rogers they would give him a ride to the SORN office so he could complete his registration. Rogers appeared to be nervous and was afraid he was going to be arrested. The officers put handcuffs on Rogers and placed him in their patrol car.

Detective Shimkus spoke with Rogers's mother. She informed him that Rogers had been "acting out" and was "out of control." *Id.* at 42. She told him that Rogers had been refusing to register because he feared he would be arrested. She also told the detective that

Rogers "would not take his medication and … that he had been self medicating by smoking synthetic marijuana or Spice and something else called 'Kush[.]'" *Id*. at 49. Detective Shimkus also learned that a police report had been filed on January 10, 2012, that indicated Rogers "ran towards a three year old girl and a fifteen year old boy in an alleyway". *Id.* at 43. Upon learning these additional facts, Detective Shimkus placed Rogers under arrest. He was subsequently charged and convicted as set out above following a bench trial.

Rogers's charging information alleged that he failed to register from January 3 to January 11, which was the day he was placed under arrest for failing to register. Upon appeal, Rogers challenges the sufficiency of the evidence supporting the conviction, contending that he was unable to register for a portion of the time he was charged with neglecting this requirement, i.e., January 11, because he was incarcerated on that day and thus was unable to register. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. We likewise consider conflicting evidence in the light most favorable to the trial court's finding. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt.

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). When considering a challenge to the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Turner v. State*, 953 N.E.2d 1039 (Ind. 2011).

Rogers does not dispute that he did not register as required on January 3, 2012, nor did

4

he do so thereafter up to and including the date of his arrest, i.e., January 11, 2012. That nine-day span was included in the charging information. Rogers acknowledges that the State could have limited the scope of the allegation to having failed to register on January 3, the implication being that had it done so, a subsequent conviction would not have been susceptible to the present sufficiency challenge. He contends, however, that because he was arrested on the final day of the named period, the registration requirement was suspended during his incarceration on that day, *see* I.C. § 11-8-8-11(i) (West, Westlaw current through 2012 Second Regular Session), and the allegation pertaining to the entire span cannot be proved . Therefore, the argument goes, because the evidence demonstrated that the failure to report was not true with respect to one of the days alleged in the charging information, proof of the charge fails entirely. This miscomprehends the nature of the offense alleged in the charging information.

In order to obtain a conviction for failing to register as an offender under I.C. § 11-8-8-17, the State was required to prove beyond a reasonable doubt that Rogers was a sex offender, that he knowingly or intentionally failed to register when required to do so, and that he has a prior unrelated conviction for failure to register. The gravamen of the offense is failing to register by the required date. In the present case, the required date was January 3, 2012. The State proved that Rogers did not fulfill his registration obligation on that day, or the next, or the next six days after that. Rogers as much as admits this. In failing to complete his registration by midnight on January 3, Rogers committed the offense set out in I.C. § 11-8-8-17; the crime was completed at that point. For purposes of this offense, it did not matter that he did not subsequently register on January 4, 5, 6, 7, 8 9, or 10, much less January 11.

5

The length of the period of time following the expiration of the deadline that he failed to register had no bearing upon the fact, nature, or classification of his offense.

As for the significance of including January 11 on the charging information, we observe first that Rogers had not completed his registration requirement on that day by the time police tracked him down at his mother's house. Although it is true that I.C. § 11-8-8-19(a) (West, Westlaw current through 2012 Second Regular Session) tolls the registration period during incarceration, we do not conclude from this or I.C. § 11-8-8-11(i) (West, Westlaw current through 2012 Second Regular Session) ("[i]f a sex or violent offender who is registered with a local law enforcement authority becomes incarcerated, the local law enforcement authority shall transmit a copy of the information provided by the sex or violent offender during registration to the department") that, as Rogers contends, the law enforcement authority "should have then assisted Rogers with registration." *Appellant's Appendix* at 13. I.C. § 11-8-8-11(i) imposes no such obligation.

In short, on the facts of this case, the inclusion of the date of his arrest in the period of time that Rogers was alleged to have failed to register as an offender does not implicate the sufficiency of the evidence. As indicated above, the undisputed evidence showed that Rogers was a sex offender within the meaning of I.C. § 11-8-8-17, that he knowingly or intentionally failed to register by January 3, 2012, and that he had a prior unrelated conviction for failure to register. This evidence was sufficient to support the conviction.

Judgment affirmed.

NAJAM, J., and BRADFORD, J., concur.