**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JENNIFER A. JOAS**
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Apr 01 2013, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANDREW RAY GOLDEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 40A05-1205-CR-243 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Salvador Vasquez, Judge
Cause No. 40C01-1009-FA-341

April 1, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Andrew Ray Golden appeals his conviction of Manufacturing Methamphetamine Within 1000 Feet of a Public Park,[1] a class A felony, and Unlawful Possession of a Hypodermic Needle,[2] a class D felony. Golden challenges his convictions on evidentiary grounds. As a threshold matter, however, the State presents the following restated issue on cross-appeal:

1.     Did the trial court err in granting Golden's motion to file a belated appeal?

The specific evidentiary issue presented by Golden is:

2.     Was the evidence sufficient to prove that Golden constructively possessed the items upon which his convictions were based?

We affirm.

The facts favorable to the conviction are essentially undisputed. On September 20, 2010, Officers Brian Taylor and Todd Beam of the Jennings County Police Department responded to a call from Alice Irwin complaining of drug activity in the area. Irwin specifically expressed concern about a neighbor, Kent Scheifinger. Accordingly, the officers traveled to Irwin's residence in the Hatton Apartments in North Vernon, Indiana. Officer Taylor arrived at approximately 10:00 p.m. and Officer Beam arrived shortly thereafter. When Officer Taylor arrived, he was met by Irwin, who at that point "yelled up the stairway and demanded that [Scheifinger] come down." *Transcript* at 153. Scheifinger came down the stairs shortly thereafter, "very, very obviously under the influence of what appeared to be

---

[1]   Ind. Code Ann. § 35-48-4-1.1 (West, Westlaw current through 2012 2nd Reg. Sess.).
[2]   Ind. Code Ann. § 16-42-19-18 (West, Westlaw current through 2012 2nd Reg. Sess.).

2

a stimulant." *Id.* at 153.

Officer Taylor spoke with Scheifinger, who admitted using methamphetamine earlier that day at an apartment across the street from Walgreens in a brown building with a big "knock hard" sign on the door. *Id.* at 157. Scheifinger also stated that he had used the methamphetamine five hours earlier with Amanda Turpin and Andrew Golden. He told Officer Taylor that he heard Turpin and Golden speak of cooking methamphetamine, "but didn't know of it going on there." *Id.* at 158. Scheifinger revealed that in the past he had traded boxes of pseudoephedrine to Golden in exchange for a half-gram of methamphetamine.

Armed with this information, Officer Taylor prepared a search warrant for Apartment 3 at 23 West Walnut Street, which matched the description provided by Scheifinger. Accompanied by several other officers, Officers Taylor and Beam met in the Walgreens parking lot across the street from the apartment to plan their strategy for executing the warrant. While they were doing so, Officer Taylor saw Turpin and Golden walking across the parking lot. Officers Taylor Beam approached and advised them that they had a search warrant for 23 West Walnut Street. Officer Taylor asked Golden where he was going and Golden pointed in the direction of 23 West Walnut Street and said that he was going to that house. Officer Taylor handcuffed Golden to secure him and prevent destruction of evidence.

While Officer Taylor dealt with Golden, Officer Beam handcuffed Turpin and searched her purse. Turpin told the officer she had needles in her purse. Officer Beam discovered two needles, one of them containing hydrocodone. He also found ninety-six

3

ephedrine pills in an Excedrin bottle, 2 metal spoons with burn marks and a white, powdery residue, a partially burnt marijuana cigarette, and a receipt for the purchase of batteries. Officer Taylor asked Golden about the items found in Turpin's purse. Golden responded that he was addicted to pain killers and that the ephedrine pills belonged to him. Before serving the warrant, Officer Taylor asked Golden what they would find in the apartment. Golden responded that the apartment was not his and that he was not staying there. At that point, Golden and Turpin were taken to jail.

The building at 23 West Walnut Street was a large, older house that had been divided into four or five separate apartments. There were two entrances to Apartment 3, which was located upstairs. Officer Taylor went to the back-door entrance and saw a large sign that read, "PLEASE knock loudly or text one of us. We cant [sic] hear you." *Exhibit Binder*, State's Exhibit 2 (emphasis in original). Officer Taylor knocked on the door. After a delay of approximately sixty to ninety seconds, Paula Ballard opened the door and identified herself as the owner of the apartment. After Ballard was removed from the apartment, the officers began their search.

The apartment consisted of a kitchen, a living room, a bedroom, and a bathroom. The officers commenced by performing a protective sweep of the premises and found no additional people in the apartment. Golden's wallet was found under a pillow on a bed in the living room. On one of the beds in the bedroom, they found a small, cut straw with a white powder residue. They observed both men's and women's clothes in the room. A pile of camouflage clothing was found on the floor next to one of the beds. When Officer Beam

4

moved the camouflage clothing he detected a chemical odor. He found a blue duffel bag under the camouflage clothing. When he unzipped the duffel bag, he cried out and was overcome by "the extreme[] odor of a chemical." *Transcript* at 292. He immediately had to leave the apartment and step outside because his throat and eyes were burning and he needed to catch his breath.

After hearing Officer Beam yell, Officer Taylor went to the bedroom and detected an odor that he associated with methamphetamine labs. Officer Taylor's lips and throat began to burn as well. He immediately determined that the source of the odor "was most definitely" the blue duffle bag that Officer Beam had placed on the bed. *Id.* at 181. Officer Taylor removed the duffle bag from the apartment and took it outside. Once outside, he looked into the duffle bag and observed "a green soda bottle that had kind of semi-clear liquid on top and a white powder with black chunks and some red things in it." *Id.* at 182. Officer Taylor "knew immediately that was an active methamphetamine reaction." *Id.* at 182-83. Based on his experience, he recognized the bottle as "most definitely a one pot method" of manufacturing methamphetamine. *Id.* at 185. Trooper Marty Meade, a clandestine laboratory technician with the Indiana State Police, was summoned to dispose of the items, chemicals, and byproducts discovered by the police.

After the search was completed, Officer Taylor went to the jail and interviewed Golden. Officer Taylor told Golden that police had discovered a meth lab in the apartment. Golden claimed he did not stay at the apartment and did not manufacture methamphetamine. He claimed the lab belonged to Goble Marksberry. Golden acknowledged to the officer that

the situation looked bad because he admitted that the pills found in Turpin's purse were his. Those pills were the same color as the pills found in the meth lab. Golden told Taylor that he had made arrangements to trade or sell the ephedrine pills in Turpin's purse, but the buyer never showed up.

Police determined that the distance between 23 West Walnut Street and a nearby city park was less than one hundred feet. As a result of this and the facts set out above, Golden was charged with: Count I - manufacturing methamphetamine within 1000 feet of a public park as a class A felony; Count II - possession of methamphetamine within 1000 feet of a public park as a class B felony; Count III - possession of anhydrous ammonia within 1000 feet of a public park as a class C felony; and Count IV - illegal possession of a hypodermic needle as a class D felony. He was convicted on all counts following a jury trial. The trial court entered judgment of conviction on Counts I and IV and vacated his convictions on Counts II and III because they were lesser-included offenses. On Count I, the trial court imposed a thirty-year sentence, with ten years suspended. The court imposed an eighteen-month sentence on Count IV, to run concurrently with the sentence imposed under Count I.

1.

Upon cross-appeal, the State contends the trial court erred in granting Golden's motion to file a belated appeal on grounds that Golden did not demonstrate that he was without fault in failing to timely file a notice of appeal. The State challenged Golden's appeal on this basis for the first time upon appeal. Our appellate courts look with disfavor upon issues that are presented by a party for the first time on appeal or in original actions

6

without first presenting the issue in the trial court. "When the State is a party to a state court proceeding, it, like all parties, must comply with the rules then governing, and its actions, like those of all parties, are subject to scrutiny under principles of waiver and estoppel." *State v. Peters*, 921 N.E.2d 861, 867 (Ind. Ct. App. 2010) (quoting *Byrd v. State*, 592 N.E.2d 690, 692 (Ind. 1992)).

In *Byrd*, the trial court granted the defendant's belated request to file an appeal. The State did not object to this request or to the trial court's ruling. The defendant commenced his appeal by filing a praecipe. The trial court entered an order noting that Byrd had filed a praecipe and "that the Praecipe filed has been considered and accepted by this Court as a Belated Praecipe for the purposes of appeal." *Byrd v. State*, 592 N.E.2d at 691. Again, the State did not object to this ruling. It was not until the day before its appellate brief was due in conjunction with Byrd's appeal that the State filed with this court a motion to dismiss Byrd's appeal on the basis that Byrd had waived his right to appeal by failing to file a petition to pursue a belated appeal via a P-C.R. 2 petition. This court granted the State's motion and dismissed the appeal. The Supreme Court granted Byrd's subsequent petition for transfer. The Supreme Court reversed the dismissal on grounds that the State could not mount an appellate challenge of the trial court's granting of the defendant's motion to file a belated appeal when the State eschewed earlier opportunities to do so before the trial court.

In the present case, the State failed to object to Golden's motion to file a belated appeal at the trial court level, despite having had several opportunities to do so. Thus, pursuant to *Byrd*, the State waived the issue for appellate review.

7

2.

Golden concedes the State presented sufficient evidence that there was a one-pot style methamphetamine lab, methamphetamine, and precursors found in Apartment 3 at 23 West Walnut Street. He also concedes the State presented sufficient evidence that hypodermic needles were found in Amanda Turpin's purse. Finally, he concedes that all of this occurred within 1000 feet of a public park. He claims his convictions must be reversed, however, because the evidence was not sufficient to prove that he possessed the items mentioned above.

Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (some citations omitted).

In order to obtain convictions on the four counts filed against Golden, the State was required to prove he possessed the items recovered following the searches of Turpin's purse and Apartment 3. Of course, at the time of his arrest, he was not in physical possession of Turpin's purse, nor was he inside Apartment 3. "But a conviction for a possessory offense does not depend on catching a defendant red-handed." *Gray v. State*, 957 N.E.2d 171, 174

8

(Ind. 2011). When the State cannot show actual possession, as in the present case, a conviction may rest upon proof of constructive possession. *Gray v. State*, 957 N.E.2d 171. "A person constructively possesses contraband when he has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Id*. at 173.

To demonstrate that the defendant was capable of maintaining dominion and control, the State must show that the defendant was able to reduce the controlled substance to his personal possession. *Gray v. State*, 957 N.E.2d 171. Proof of a possessory interest in the premises in which contraband is found is adequate to show the capability to maintain dominion and control over the items in question. *Id.* Even where possession of the premises is non-exclusive, the trier of fact may infer that a party in possession of the premises is capable of exercising dominion and control over all items on the premises. *Id.*

> Turning to the intent element, our Supreme Court has explained:

> A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive. When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item. We have previously identified some possible examples, including (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns. ([L]ist not exhaustive as other circumstances could just as reasonably demonstrate requisite knowledge[.])

*Id*. at 174–75.

9

In the present case, Golden did not have exclusive possession of Apartment 3 or Turpin's purse. The State did, however, present evidence of additional circumstances that support an inference that Golden had both the intent and capability to maintain dominion and control over the items found in Turpin's purse and the apartment. With respect to the items in Turpin's purse, there was evidence that Turpin was walking with Golden at the time she was stopped. Thus, he was mere feet away. Moreover, Golden admitted that some of the items in the purse, i.e., the ninety-six ephedrine pills, were his. This evidence was sufficient to establish that Golden was able to reduce the items in Turpin's purse to his personal possession, and thus sufficient to prove that he was capable of maintaining dominion and control over them. *See Gray v. State*, 957 N.E.2d 171.

Turning now to the items found in Apartment 3, Golden acknowledges that sufficient evidence established there was a one-pot style methamphetamine lab, methamphetamine, and precursors located inside that residence. The bottle in which the methamphetamine was being manufactured when police discovered it was found inside a duffle bag belonging to Golden. The duffle bag, in turn, was found under a pile of camouflage clothing that the jury could reasonably have found belonged to Golden. Golden's wallet was found concealed under a pillow on a bed in an adjacent room. Moreover, Golden was confronted while returning to the residence. When the police executed the warrant a few moments later, they discovered a quantity of methamphetamine in the process of being manufactured. From this evidence, the jury could reasonably have found that the contraband was Golden's. Golden urges us to adopt an interpretation of the evidence that is consistent with his claim of

innocence and substitute our judgment for that of the jury. Our standard of review forbids this. *See Bailey v. State*, 979 N.E.2d 133. The evidence was sufficient to support the convictions.

Judgment affirmed.

NAJAM, J., and BRADFORD, J., concur.