

FILED
Jul 24 2018, 9:51 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony A. Keith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 24, 2018

Court of Appeals Case No.
33A01-1712-CR-2981

Appeal from the Henry Circuit
Court

The Honorable Kit C. Dean Crane,
Judge

Trial Court Cause No.
33C02-1603-F4-2

**Brown, Judge.**

[1] Anthony A. Keith appeals his conviction for possession of child pornography involving Snapchat[1] images as a level 6 felony. Keith raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

## *Facts and Procedural History*

[2] H.T. was born on May 14, 2001. She and her family camped at Yogi Bear Jellystone Park in Knightstown, Indiana, where her father worked on the equipment, "every weekend when [she] had school, and then . . . all summer." Transcript Volume 2 at 50. While camping, H.T. met Keith, who was employed by the campground, and knew him for three to four years before they "bec[a]me friends." *Id.* H.T. would ride along with him on the campground's "chuck wagon" to assist while Keith worked on equipment or campers that required maintenance. *Id.*

[3] At some point, Keith asked H.T. for her cellular phone number, and the two exchanged numbers. Keith and H.T. would text each other on a daily basis. They also communicated via Snapchat, which H.T. had requested Keith to join on April 5, 2015.

[4] On October 24, 2015, H.T participated in the campground's haunted trail. At the end of the night, Keith, who was wearing a bear costume, approached H.T.

---

[1] Snapchat is a cellular phone application used to "message people . . . and send pictures." Transcript Volume 2 at 53.

and asked her to help turn off the generators. When the two were alone, he asked H.T. to "play with his [penis]" and if he could fondle her. Transcript Volume 2 at 61. He also took pictures of H.T.'s uncovered vagina with his phone.

[5] On October 25, 2015, Keith and H.T. communicated via text message as follows:

> Keith: Good Morning sweetie. Thanks for your help last night
>
> H.T.: Your [sic] welcome
>
> H.T.: Are you still out here at the campground
>
> Keith: Yep. I'll come see you when Teresa leaves
>
> H.T.: Ok tell me when she leaves so I know
>
> * * * * *
>
> H.T.: Are you going to come see me before I leave
>
> H.T.: Will you come see me before I leave please
>
> Keith: I'm heading up now. She is or has just left

State's Exhibit 1 at 3.

[6] At some point, Keith and H.T. again exchanged text messages as follows:

> Keith: I'm trying
>
> Keith: Try snapchatting me
>
> H.T.: Ok

H.T.: What do you want me to snapchat you

Keith: I don't care, I don't even have you as a friend

Keith: I ain't seeing or receiving anything WTF

H.T.: What is your username

Keith: Oh wait. Did you just send "who is this"

H.T.: Yes

Keith: D--- it. Is there another app that only you and me can chat. I'm afraid Teresa could be monitoring snap chat. My Friends are people I don't even know.

H.T.: Not that I know of,[]but you can unfriend the people you you don't want on there.

*Id.* at 6.

On November 4, 2015, Keith and H.T. shared the following exchange by text message:

H.T.: What's up

Keith: Jake[2]

H.T.: Yes

H.T.: Yes I want Jake

Keith: Really

---

[2] At trial, H.T. testified that "Jake" was the name of Keith's penis, that at some point he told her he referred to his penis as Jake, and that, whenever he would text her about Jake, he was texting her about his penis. Transcript Volume 2 at 66-67.

H.T.: Yeah really

Keith: I don't believe ya

H.T.: Why

Keith: You haven't seen him

H.T.: Well I have played with him and I want to see him

Keith: We'll see

H.T.: I want to see him

H.T.: If that's alright

Keith: Absolutely

*Id.* at 7-8.

[8] At some other point, Keith and H.T. again text messaged about "Jake," as follows:

Keith: Hey sweetie

H.T.: What's up

Keith: Jake

H.T.: Yes

H.T.: I want Jake

Keith: You can't handle Jake

H.T.: Yes I can

Keith: Jake will hurt you

H.T.: No he won't

> H.T.: I want to see Jake
>
> Keith: What do you call yours?[3]

*Id.* at 9.

On December 10, 2015, H.T. sent a message which stated, ". . . nothing much just sitting in my room playing on my phone what you up to," and Keith responded, "Playing with your what. Oh nevermind. I thought you said something else. I was gonna say. Take a video. Lol." *Id.* at 10. H.T. then replied, "If I was doing that how was I going to send you the video." *Id.*

On December 15, 2015, Keith and H.T. communicated via text message as follows:

> H.T.: What's up
>
> Keith: I'm s[i]tting here look [sic] at your photo
>
> H.T.: Which one
>
> Keith: Both
>
> H.T.: Do you like them that much

*Id.* at 11.

---

[3] At trial, H.T. was asked what Keith meant when he asked, "[w]hat do you call yours," she responded she thought he was talking about her vagina, and she testified that she ended up having the name "Bonnie" for her vagina. Transcript Volume 2 at 95-96.

[11] On December 28, 2015, Keith sent H.T. a message which stated that he was "[t]rying to get a deleted pix [sic] of Bonnie," H.T. sent Keith a message which stated, "[d]o you need me to send you one," and Keith responded, "I would like that. Is it possible to do a video? I've never done that," and indicated after H.T. messaged affirmatively that he "might try that." *Id.* at 17.

[12] At some point, Keith sent H.T. a text message which stated, "[f]or some reason the photos you sent last night got on my computer through ICloud. . [.] She questioned the h--- out of me about who sent them. I told her it was 1 of my buddies and it was a female puller. I have since turned off iCloud on my phone." *Id.* at 28. After more messaging, he sent H.T. a message which stated, "[k]inda freaked me out. I had to be fast on my feet with an answer that I knew she would accept. You can still send all the photos you want. Nobody will see them now." *Id.*

[13] On March 10, 2016, the State charged Keith with sexual misconduct with a minor as a level 4 felony, vicarious sexual gratification as a level 5 felony, child solicitation as a level 5 felony, and possession of child pornography, a level 6 felony. On May 12, 2017, the State amended the first two counts to attempted sexual misconduct with a minor as a level 4 felony and sexual misconduct with a minor as a level 5 felony.

[14] At trial, H.T. testified that, at the time she and Keith "were becoming friends . . . and texting and Snapchatting each other," Keith knew her age because they "shared the same birthday," meaning the same month and date. Transcript

Volume 2 at 54. She testified she did not know his birth year but that she knew he was approximately "[f]orty-six." *Id.* at 55. She stated that at some point in the relationship, Keith started asking her to send him photographs of herself and that "[h]e wanted pictures of . . . my [breasts] and vagina." *Id.* When asked how he asked for those photographs, she replied that he "would . . . ask me, 'Will you send me, like, pictures of your [breasts] and vagina,'" and that he did so in person at the campground. *Id.* She indicated that she sent him multiple unclothed pictures of her breasts and vagina through Snapchat "more than ten times." *Id.* at 56.

[15] H.T. testified that, on October 29, 2015, she and Keith discussed "what his Snapchat username [was]," that she knew what his screen name was "[b]ecause he had – it had . . . shown up on my thing where I searched it," and that she thought she and Keith were connected on Snapchat. *Id.* at 91. She also testified that she went to the campground after the November 4, 2015 text messages and accompanied Keith alone to a barn, Keith made advances towards her, he "kept on asking me if I would play with his [penis]," and that he took pictures when she had her pants pulled down of her uncovered vagina. *Id.* at 71. When asked what she meant by "If [I] was doing that" in her December 10, 2015 message, H.T. stated that she meant playing with herself, or playing with her breasts or vagina. *Id.* at 96. With respect to Keith's December 15, 2015 message that he was sitting and looking at her photos, H.T. testified that she had sent him photos of her uncovered breasts and vagina. She

answered affirmatively when asked if, "when he refers to both, did you send separate photos." *Id.* at 98.

[16] H.T. was shown the twelfth page of State's Exhibit 1, which was a photograph of an undated text message conversation between herself and Keith, and answered, when asked what the text message conversation referred to, "[l]ike, his wife finding out." *Id.* at 98. In response to "[d]id he have some reason why he thought his wife found something out," she stated, "[b]ecause I think his phone connected to his laptop." *Id.*

[17] H.T. was shown the thirteenth page of State's Exhibit 1, which was a photograph of an undated text message conversation between herself and Keith, was asked to read it, and stated:

> "I'm sorry, I didn't mean it." "I deleted everything from the – from – I deleted everything from pics to text and rebooted my phone. It'll probably – it probably won't – wouldn't be a bad idea for you to do the same. I didn't realize that when I deleted pics I also had to go into the file of deleted stuff and delete them again." "Okay. Will do." "I love you, but I don't want to get into trouble, and when we will – then we will never be able to see each other again."

*Id.* at 99. She then testified that she meant "[l]ike, him – like, me sending, like, pictures to him," when she had texted "I'm sorry, I didn't mean that." *Id.* She answered affirmatively when she was asked, "[s]o you sent some pictures, and – and they possibly got discovered." *Id.* After the prosecutor stated, "he talks

about deleting stuff . . . asking you to delete stuff," and asked H.T. if she deleted photographs, and she responded affirmatively. *Id.* at 100.

[18] H.T. was shown the fourteenth page of State's Exhibit 1, which was a photograph of an undated text message conversation between herself and Keith, was asked to read it, and stated:

> "I might be coming to New Castle." "Oh, really? Why?"
> "Walmart." "Why are you – why here in New Castle?"
> "Looking for a red sweatshirt." "Okay." "How's Bonnie?"
> "She is doing good, but she could be better." "Oh, she will. I
> promise." "Okay. How's Jake?" "Had a great night. Doing
> good but could do – could be better, also." "He'll get better once
> camping gets here. I promise."

*Id.* When asked about what Keith was referring when he inquired, "How's Bonnie," H.T. stated, "[m]y vagina." *Id.* at 101.

[19] When shown the fifteenth page of State's Exhibit 1, or a photograph of a text message displaying a picture of H.T.'s face and a picture of Keith's face, H.T. indicated that she was in her room when she took her picture. When shown the photographs of the December 28, 2015 text message conversation between herself and Keith, H.T. testified that, when Keith referred to deleted pictures of Bonnie, he was referring to "[t]he pictures that he had deleted off of his phone" and that when he asked in the message if it was possible "to do a video," she believed it meant "one like on Snapchat. Like, a short one." *Id.* at 103-104. When shown the photographs of the January 5, 2016 text message conversation between herself and Keith, H.T. testified that she was referring to her breasts

when she messaged "before long, you will get to see them in person." *Id.* at 108.

[20] After H.T. was shown photographs of the conversation in which Keith had messaged her that "the photos you sent last night got on my computer" and read the conversation, she testified that she had sent more photos of her breasts and vagina. *Id.* at 111. She also testified that she continued to send pictures of herself throughout October, November, December, 2015 and January, 2016 because she believed she was in a relationship with Keith, and that she was fourteen at the time. She answered affirmatively when asked if Keith ever sent her photographs of his penis, that she knew it was his "[b]ecause you could see . . . his face in the picture," and that he would send the photographs whenever she sent him one. *Id.* at 56-57. With respect to his photographs, she testified that she received them through Snapchat, she saved the photographs "[a] couple of time[s], but . . . deleted them," Keith would say that she needed to delete them before his wife found out, and that he would talk about deleting items "[a]t least once a week, or every time we – he sent a picture." *Id.* at 57.

[21] On direct examination, the following exchange occurred concerning Snapchat:

> [Prosecutor]: Okay. And the messages and the pictures that you send, are those saved anywhere in the app, that you –
>
> [H.T.]: No.
>
> [Prosecutor]: – know of? Is that one of the features of Snapchat?
>
> [H.T.]: Yeah.

*Id.* at 54. When asked to explain her basic understanding of how Snapchat works, she stated that it was "[l]ike sending pictures of . . . what you're around and . . . where you're at" and that "they deleted on their own." Transcript Volume 2 at 121, 122. She responded, "ten seconds," when asked if she knew what the normal time limit for a Snapchat is, and answered affirmatively when then questioned, "if you don't save a picture within that ten seconds, it deletes" and "as far as you know there's no way to recover that." *Id.* at 138-139. She testified that she saved photos "off of Snapchat" which were "saved to [her] hard drive of [her] iPhone," and answered affirmatively when asked if it was possible to save those images onto a wireless device or computer and if she had ever saved images with Keith to her phone. *Id.* at 129.

[22] On redirect examination, the following exchange occurred between the court, the prosecutor, and Keith's counsel:

> [Prosecutor]: When you sent pictures of your breast or vagina to [Keith], did you ever get a notice that he saved the picture?
>
> [Keith's Counsel]: I would object.
>
> * * * * *
>
> [Keith's Counsel]: I think it calls for [] hearsay – it's not her statement. I think it calls for a – something that's an out of court statement from the app itself. So I'm going to object.
>
> THE COURT: Out of court statement from?
>
> [Keith's Counsel]: From the – from the Snapchat app itself.
>
> THE COURT: Response, [Prosecutor]?

[Prosecutor]: Your Honor, I think that it's an observation that she can testify that she made that the app gave her a notification that a photo was saved.

[Keith's Counsel]: I'll –

THE COURT: Well, I . . . guess it's not being offered that the photo was saved, it's being offered that she received a notification. So I'll deny – overrule your objection. You can answer the question, ma'am.

[H.T.]: Yes.

[Prosecutor]: Yes you got notifications?

[H.T.]: Yes, I did.

*Id.* at 140. During recross-examination, H.T. testified that, in her experience with Snapchat, the images saved to the phone.

[23]     Detective Sergeant Anthony Wayne Darling of the Henry County Sheriff's Department testified that he interviewed Keith on March 14, 2016, that he had very little experience with Snapchat gained through training and in consulting with the Cyber Crimes Unit of the Indiana State Police Lab, and that it was his "understanding that with Snapchat that the way . . . a photo is saved is if someone – for instance, whether who receives it would take a screenshot of that." *Id.* at 185. The court admitted and played for the jury an audio recording of the interview, in which Keith admitted that H.T. had sent him pictures of her breasts and vagina.

[24] At the conclusion of trial, the jury found Keith guilty of sexual misconduct with a minor as a level 5 felony, child solicitation as a level 5 felony, and possession of child pornography, a level 6 felony.

## *Discussion*

[25] The issue is whether the evidence is sufficient to sustain Keith's conviction for possession of child pornography as a level 6 felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[26] At the time of the offense, Ind. Code § 35-42-4-4(c) provided in relevant part that "[a] person who knowingly or intentionally possesses . . . a photograph . . . that depicts or describes sexual conduct by a child who the person knows is less than eighteen (18) years of age or who appears to be less than eighteen (18) years of age, and that lacks serious literary, artistic, political, or scientific value commits possession of child pornography, a Level 6 felony."[4] For purposes of Indiana criminal law, a party engages in knowing conduct "if, when he engages

---

[4] Subsequently amended by Pub. L. No. 13-2016, § 15 (eff. July 1, 2016).

in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). A party engages in intentional conduct "if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a).

[27] Possession can be either actual or constructive. *Eckrich v. State*, 73 N.E.3d 744, 746 (Ind. Ct. App. 2017) (citing *Sargent v. State*, 27 N.E.3d 729, 732-733 (Ind. 2015) ("Although arising in a different context our jurisprudence on the issue of 'possession' is rather straightforward: it can be either actual or constructive.")), *trans. denied*. Constructive possession occurs when a "person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Id.* (quoting *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011)). The capability requirement is met "when the State shows that the defendant is able to reduce the [contraband] to the defendant's personal possession." *Perry v. State*, 956 N.E.2d 41, 61 (Ind. Ct. App. 2011) (citing *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999)), *reh'g denied*.

[28] Keith argues that merely receiving an image sent by somebody else that is automatically deleted by the application is not possession under Indiana law and that he did not "intentionally point a web browser to certain websites to view them." Appellant's Brief at 7, 11. He asserts that the "issue of whether receiving child pornography through Snapchat is knowing or intentional 'possession' is an issue of first impression in Indiana" and that the child pornography statute in effect at the time of the offense prohibited only possession, and not viewing, of child pornography. *Id.* at 9. He also argues that, while he could save pornographic images by taking a screenshot of the

Snapchat, police did not find any image on his computer or cellular phone and that the court ruled that H.T.'s testimony, *i.e.*, she believed Keith had saved the images she sent him based on her receipt of a notice from Snapchat, was not offered as proof that the image was saved.

[29] The State argues that Keith asked H.T. to send him images of her uncovered breasts and vagina through Snapchat, points to H.T.'s receipt of notification from Snapchat, and maintains that, although Snapchat automatically deleted the images, Keith could still control what happened to the images in the brief interim before they were deleted by saving them to his phone and reducing them to his personal possession.

[30] The record reveals that Keith took pictures of H.T.'s uncovered vagina with his phone, that he made numerous references to H.T., a person he knew was under the age of eighteen, and to obtaining photographs of her depicting sexual conduct, including those on December 28, 2015, and that he was trying to obtain a deleted picture of her vagina and was wondering if it was "possible to do a video." State's Exhibit 1 at 17. We note H.T.'s testimony that he started asking her to send him photographs of herself, that "[h]e wanted pictures of . . . my [breasts] and vagina," and that, when she had sent pictures of her breasts or vagina to Keith, she received a notification from Snapchat at least once that a photo had been saved. Transcript Volume 2 at 55. We also note Keith's message that "[f]or some reason the photos you sent last night got on my computer through ICloud." State's Exhibit 1 at 28.

[31]     We further observe that Keith requested via text message that H.T. "try snapchatting [him]" and later reassured her that she could "still send all the photos [she] want[ed]" and "[n]obody will see them now," statements which ultimately resulted in H.T. sending multiple unclothed pictures through Snapchat over multiple occurrences. *Id.* at 6, 28. The trial testimony regarding Snapchat reveals that images sent through the Snapchat application may be saved onto a wireless device or computer and that there is a time limit of around ten seconds in which to save a picture. Based upon the record, the State presented evidence of probative value from which a reasonable jury could find Keith guilty beyond a reasonable doubt of possession of child pornography as a level 6 felony.[5]

## Conclusion

[32]     For the foregoing reasons, we affirm Keith's conviction for possession of child pornography as a level 6 felony.

[33]     Affirmed.

Bailey, J., and Crone, J., concur.

---

[5] To the extent that Keith argues that the statute's 2017 amendment reflects that "prior to July 1, 2017 . . . 'possession' did not include merely accessing images with an intent to view them," we affirm on the basis of whether Keith "knowingly or intentionally possess[ed]" the images and not based on the 2017 amendment language.