# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2020, 11:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Devin Bowman,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 30, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2574<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Clark H. Rogers, Judge<br><br>Trial Court Cause No.<br>49G25-1811-F6-40678 |

**Najam, Judge.**

# Statement of the Case

Devin Bowman appeals his conviction for possession of a narcotic, as a Level 6 felony, following a jury trial. Bowman presents one issue for our review, namely, whether the State presented sufficient evidence to support his conviction.

We affirm.

# Facts and Procedural History

In November 2018, Bowman was living in his grandmother's trailer while serving a sentence on community corrections. On November 15, Marion County Sheriff's Deputy Steve Hoffman and Marion County Community Corrections Field Officer Larry Taylor conducted a home visit in order to search Bowman's residence. When the officers arrived, Bowman's grandmother let them in and informed them that Bowman was in his bedroom. Also present in Bowman's bedroom was his girlfriend, Debra Balasquide. The officers knocked on the bedroom door and announced themselves. Deputy Hoffman then "heard some commotion in the room," and it took "a while" for Bowman to answer the door. Tr. at 62.

When Bowman opened the door, Deputy Hoffman "immediately" noticed that Bowman was "out of it" and that he had "pinpoint pupils," which indicated to Deputy Hoffman that Bowman was "high on an opiate." *Id*. at 62, 63. He also observed that Balasquide was in the same condition as Bowman. At that point,

Deputy Hoffman directed Bowman and Balasquide to wait with Officer Taylor in the front room so that he could search Bowman's bedroom.

[5] When Deputy Hoffman entered the room, he noticed several items on a table, including "waxy papers," which Deputy Hoffman believed were used to transport heroin. *Id*. at 63. Deputy Hoffman also observed a "spoon with some kind of white powdery residue on it" and a bottle of water, which items "were indicative of heroin being used in that particular room." *Id*. at 63, 64. Deputy Hoffman also saw a "Speedway cup" and "two Contigo thermos bottles" on the same table. *Id*. at 64. Deputy Hoffman then proceeded to search the rest of the room. During that search, Deputy Hoffman discovered another spoon in between the mattress and the wall that had "a scorch mark" on the bottom and "some residue" in it. *Id*. at 64, 65.

[6] While Deputy Hoffman was searching the room, Bowman was acting "nervous." *Id*. at 107. At one point, Balasquide asked "if she could have her cup that was in the room." *Id*. at 65. Deputy Hoffman gave Balasquide the Speedway cup, but Balasquide "shout[ed]" that that was not the correct cup. *Id*. Deputy Hoffman then went to give her the Contigo thermoses. Before he handed the thermoses to Balasquide, he searched them. The first one was empty, but the second one contained approximately fifty-seven dollars and "the same waxy like paper" that he had seen on the table. *Id*. Deputy Hoffman opened the wax paper and discovered 0.3 gram of heroin. At that point, the officers arrested Bowman and Balasquide. During a search of Bowman's

person, Deputy Hoffman found a syringe cap in Bowman's pocket. The two individuals were then transported to the jail.

[7] Once at the jail, Deputy Hoffman observed Bowman in the waiting area. Bowman was "slumped over" and "nodding off," which was "indicative" of overdosing. *Id.* at 74. At that point, the medics administered two doses of Narcan, after which Bowman was "revived." *Id.* Following his incarceration, Bowman spoke with Balasquide on the phone. During that phone call, Balasquide complained that she had been handcuffed first. Bowman responded: "I told you not to ask for the cups though." Ex. 7.

[8] The State charged Bowman with possession of a narcotic, as a Level 6 felony, and possession of paraphernalia, as a Class C misdemeanor. The trial court held a jury trial on August 6, 2019. Following the trial, the jury found Bowman guilty of possession of a narcotic but not guilty of possession of paraphernalia. The trial court entered judgment of conviction accordingly and sentenced Bowman to one year in the Department of Correction. This appeal ensued.

## Discussion and Decision

[9] Bowman contends that the State failed to present sufficient evidence to support his conviction. Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh the evidence.

*Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[10] Bowman's sole contention on appeal is that the State did not present sufficient evidence to demonstrate that he constructively possessed the heroin. "A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). Where, as here, a person's control over the premises where the contraband is found is nonexclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate the person knew of the presence of the contraband. *See id.* at 174-75.

[11] Those additional circumstances may include: (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns. *Id.* at 175. "Those enumerated circumstances are not exhaustive; ultimately, our question is whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband." *Johnson v. State*, 59 N.E.3d 1071, 1074 (Ind. Ct. App. 2016).

[12]   Here, the evidence demonstrates that, when officers first knocked on Bowman's bedroom door and announced themselves, it took "a while" for Bowman to answer the door, during which time the officers "heard some commotion in the room." Tr. at 52. Then, when Deputy Hoffman first entered the room, he observed items in plain view that were "indicative of heroin use." *Id*. at 63. Specifically, Deputy Hoffman saw "waxy papers" on a table that he believed were the same type of paper that is usually used to transport heroin, a spoon with "white powdery residue on it," and a bottle of water. *Id*. at 63. And during a search of the room, Deputy Hoffman found another spoon with "a scorch mark" on the bottom and "some residue in it." *Id*. at 64, 65. Deputy Hoffman then found heroin in one of the thermoses that was on the same table as the wax paper and one of the spoons.

[13]   Further, Deputy Hoffman noticed signs that Bowman had used heroin. Indeed, when Bowman finally opened the door, Deputy Hoffman noticed that Bowman had pinpoint pupils and that he was "out of it," which indicated to Deputy Hoffman that Bowman was "high on an opiate." *Id*. at 62, 63. Further, once at the jail, Bowman displayed signs that he had overdosed, and medics had to administer two doses of Narcan before Bowman was "revived." *Id*. at 74.

[14]   Additionally, following his arrest, Bowman told Balasquide: "I told you not to ask for the cups[.]" Ex. 7. A reasonable fact-finder could infer from that statement that Bowman knew the heroin was in the cup and that he did not want Balasquide to draw the officer's attention to it.

Based on that evidence, a reasonable jury could conclude that Bowman knew of the nature and presence of the contraband. *See Johnson*, 59 N.E.3d at 107. Bowman's contentions on appeal are merely a request that we reweigh the evidence, which we cannot do. We hold that the State presented sufficient evidence to support his conviction for possession of a narcotic, as a Level 6 felony, and we affirm his conviction.

Affirmed.

Kirsch, J., and Brown, J., concur.