# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 21 2018, 10:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Augustus B. Gaines, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 21, 2018 <br><br> Court of Appeals Case No. <br> 49A02-1711-CR-2656 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Richard Hagenmaier, Commissioner <br><br> Trial Court Cause No. <br> 49G21-1605-F4-17685 |

**Pyle, Judge.**

# Statement of the Case

Augustus Gaines, Jr. ("Gaines") appeals, following a bench trial, his convictions for Level 4 felony unlawful possession of a firearm by a serious violent felon[1] and Level 5 felony possession of a narcotic drug.[2] Gaines argues that: (1) the trial court committed fundamental error when it admitted into evidence the drugs that had been found in his pocket and the handgun that had been found in his front yard; and (2) there was insufficient evidence to support his Level 4 felony unlawful possession of a firearm by a serious violent felon conviction.[3] Concluding that Gaines has failed to show fundamental error and that the evidence was sufficient, we affirm Gaines's convictions.

We affirm.

# Issues

1. Whether the trial court committed fundamental error when it admitted into evidence the drugs that had been found in Gaines' pocket and the handgun that had been found on his property.

2. Whether sufficient evidence supports Gaines' Level 4 felony unlawful possession of a firearm by a serious violent felon conviction.

---

[1] IND. CODE § 35-47-4-5.

[2] I.C. § 35-48-4-6.

[3] Gaines does not challenge the sufficiency of the evidence for his Level 5 felony possession of a narcotic drug conviction.

## Facts

On May 7, 2016, around 11:30 p.m., Officer Zachary Taylor ("Officer Taylor"), Officer Jamie Thorn ("Officer Thorn"), and some other police officers from the Indianapolis Metropolitan Police Department ("IMPD") went to the 1900 block of Sharon Avenue after receiving a dispatch regarding "shots fired." (Tr. Vol. 2 at 71, 87). Once on the scene, Officer Thorn spoke to a lady who indicated that there had been a "disturbance" at 1904 Sharon Avenue, which was Gaines' house. (Tr. Vol. 2 at 88). As the officers checked for shell casings and any damage related to the shots fired, they saw an unoccupied car, which had its windows down and the radio loudly playing, parked in front Gaines' house. After Officer Taylor looked to see if a victim was inside the car, Gaines, who was standing in his fenced-in front yard, "started yelling, yelling like get off my street, this is my street." (Tr. Vol. 2 at 72). Gaines was "agitated, upset, [and] belligerent[,]" and Officer Taylor asked Gaines to see his identification. (Tr. Vol. 2 at 72). Officer Taylor noticed that Gaines had slurred speech and bloodshot eyes. The officer returned Gaines's identification and told Gaines that he was free to leave and that he should go inside his house.

Officer Taylor walked down to the intersection to talk with the other officers who continued to search for shell casings. Gaines, however, stayed outside and continued yelling. As Gaines stood in his yard, he walked back and forth numerous times from his fence to his screened-in porch. Gaines' "demeanor was agitated," and he was "verbally abusive towards officers and people on the scene." (Tr. Vol. 2 at 73). During that time, the police received a dispatch

regarding a "disturbance" in relation to the "noise" at Gaines's house. (Tr. Vol. 2 at 74, 89). Officer Taylor walked to Gaines' yard, where Gaines "continued to be belligerent" and was "verbally . . . aggressive" with the officers. (Tr. Vol. 2 at 75). Gaines refused to quiet down, and the officers then arrested him for disorderly conduct. The officers placed Gaines in handcuffs and sat him on the curb in front of his house. An officer subsequently patted down Gaines and found, in Gaines' pocket, a knotted baggie corner containing 9.03 grams of heroin.

[5] At that same time, Gaines's girlfriend, Dawn George ("George"), George's sister, Michelle George ("Michelle"), and two young children pulled up in van, and Gaines "yelled towards them." (Tr. Vol. 2 at 76). Officer Taylor spoke with George, and she told the officer that she lived at the house with Gaines. The officer asked George if she would consent to the search of the yard for a weapon, and she agreed. Gaines then yelled out the following to George: "[I]f you let them [the officers] do anything, you ain't going to have no place to live." (Tr. Vol. 2 at 78). When Officer Taylor walked up the sidewalk and approached the outside door of Gaines' screened-in porch, he saw a chicken-shaped flower pot that was in the yard and just a few feet from the sidewalk. The flower pot was in the area of the yard where Gaines had been pacing back and forth when he was yelling at the officers. Officer Taylor "looked down into" the flower pot and saw a handgun sitting on top of the dirt in the pot. (Tr. Vol. 2 at 79). The handgun, which was a Taurus .40 caliber pistol, contained a

loaded magazine and a live round in the chamber. Later testing revealed that Gaines' DNA was found on the live round that had been inside the handgun.

[6] The State ultimately charged Gaines with Level 4 felony unlawful possession of a firearm by a serious violent felon[4] and Level 5 felony possession of a narcotic drug, and it alleged that he was an habitual offender. Gaines filed a motion to suppress the gun and drugs, arguing that "the officers lacked probable cause to arrest" him and that they "conducted a warrantless search of [his] residence without an adequate exception to the warrant requirement." (App. Vol. 2 at 113). The trial court held a hearing on Gaines' motion and denied the motion.

[7] The trial court held a bench trial on October 2, 2017. Officer Taylor and Officer Thorn testified to the facts above. When the State moved to admit State's Exhibit 10, the heroin discovered in Gaines' pocket, the trial court asked Gaines if he had any objection, and Gaines' counsel replied, "No, Judge." (Tr. Vol. 2 at 95). When the State moved to admit State's Exhibit 19, the gun recovered from the flower pot in Gaines' yard, Gaines' counsel stated, "No objection, Judge." (Tr. Vol. 2 at 110).[5]

[8] The trial court found Gaines guilty of Level 4 felony unlawful possession of a firearm by a serious violent felon and Level 5 felony possession of a narcotic

---

[4] The State alleged that Gaines had been convicted in 2007 of the serious violent felony of Class B felony dealing cocaine.

[5] Gaines did, however, object to Officer Thorn's testimony regarding finding drugs in Gaines' pocket and to Officer Taylor's testimony regarding obtaining George's consent to search the yard.

drug, and it determined that he was an habitual offender. For Gaines' unlawful possession of a firearm conviction, the trial court imposed an eight (8) year sentence, with six (6) years executed and two (2) years suspended to probation, and it enhanced that sentence by six (6) years for Gaines' habitual offender adjudication. The trial court also imposed a concurrent three (3) year sentence for his possession of a narcotic drug conviction. Thus, the trial court imposed an aggregate fourteen (14) year sentence, with twelve (12) year executed in the Indiana Department of Correction and two (2) years suspended to probation. Gaines now appeals.

# Decision

[9] Gaines argues that: (1) the trial court committed fundamental error when it admitted into evidence the drugs that had been found in Gaines' pocket and the handgun that had been found in his yard; and (2) there was insufficient evidence to support his Level 4 felony unlawful possession of a firearm by a serious violent felon conviction. We will review each argument in turn.

## 1. Admission of Evidence

[10] Gaines first challenges the admission of evidence during his bench trial.[6] He contends that the admission of the evidence violated his Fourth Amendment

---

[6] Gaines initially raised this issue as a challenge to the trial court's denial of his motion to suppress. However, because Gaines is appealing following a trial, the issue presented is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

rights because the drugs and gun were obtained through a warrantless search. Specifically, Gaines asserts that the heroin found in his pocket should not have been admitted into evidence because the drugs were found pursuant to an unlawful arrest, and he contends that the gun found in his yard was improperly admitted because the police did not obtain a valid consent to search his yard.

[11]     The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[12]     We need not, however, review whether the trial court erred in admitting the gun and drugs into evidence because Gaines failed to preserve the issue for appeal by failing to make a contemporaneous objection at trial. "A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*. *See also* Ind. Evidence Rule 103(a)(1) (providing that a "party may claim error in a ruling to admit . . . evidence *only if* . . . [the] party, on the

record[,] . . . *timely objects* . . . and . . . states the specific ground" for the objection) (emphases added).[7]

[13] Here, when the State moved to admit the gun and drugs into evidence, Gaines did not object. In fact, Gaines affirmatively stated that he had no objection to the admission of this evidence. An "'appellant cannot on the one hand state at trial that he has no objection to the admission of evidence and thereafter in this Court claim such admission to be erroneous.'" *Halliburton v. State*, 1 N.E.3d 670, 678-79 (Ind. 2013) (quoting *Harrison v. State*, 258 Ind. 359, 363, 281 N.E.2d 98, 100 (1972)). Consequently, Gaines has waived appellate review of his claim of error. *See, e.g.*, *Brown*, 929 N.E.2d at 207 (holding that defendant, who did not object to evidence upon introduction of evidence and who affirmatively stated he had no objection, waived review of his argument that evidence was unlawfully seized); *Nowling v. State*, 961 N.E.2d 34, 35 (Ind. Ct. App. 2012) (holding that a defendant had waived appellate challenge to the admission of evidence by stating "no objection" when the evidence was offered for admission), *trans. denied*.

[14] Gaines acknowledges that he did not object to the admission of the gun and heroin into evidence. Because Gaines failed to object to the admission of the challenged evidence, he must meet the "daunting" fundamental error standard.

---

[7] We note that there is a limited exception—not applicable here—to the requirement to continuously object at trial. Specifically, Indiana Evidence Rule 103(b), which became effective January 1, 2014, provides that "[o]nce the court rules definitively on the record at trial a party need not renew an objection . . . to preserve a claim of error for appeal."

*See Harris v. State*, 76 N.E.3d 137, 140 (Ind. 2017). "A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Brown*, 929 N.E.2d at 207. "The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Id.* (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). The *Brown* Court explained that a showing of fundamental error arising from the admission of alleged illegally seized evidence is very limited:

> [A]n error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning Brown's conviction lies not in doubt as to whether Brown committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

*Brown*, 929 N.E.2d at 207. *See also Swinehart v. State*, 268 Ind. 460, 466-67, 376 N.E.2d 486, 491 (1978) (explaining that even if "evidence may have been obtained in violation of the defendant's constitutional rights to be protected against unlawful search and seizure," its introduction at trial "does not elevate

the issue to the status of fundamental error that may be raised for the first time on appeal").

[15] Just as in *Brown*, Gaines does not assert any such claims in this case. He does not argue that the evidence was not what it appeared to be. Instead, Gaines asserts that the evidence was improperly admitted, alleging that the evidence was the product of an unconstitutional search and seizure. Thus, Gaines' claim of error does not rise to the level of fundamental error. *See Brown*, 929 N.E.2d at 207 (holding that a claim of error asserting that evidence was unlawfully seized, without more, does not constitute fundamental error). Because Gaines affirmatively stated that he had no objection to the admission of the evidence at issue and has failed to surmount the daunting task of demonstrating any fundamental error in the admission of the evidence, he has failed to show any grounds for reversal. *See, e.g.*, *id.* at 208 (explaining that it is not necessary to resolve the issue of whether a search was lawful where the defendant had failed to preserve the issue by failing to object and where there was no fundamental error); *see also Mamon v. State*, 6 N.E.3d 488, 490 (Ind. Ct. App. 2014) (rejecting the defendant's claim of fundamental error where the defendant made no assertion of evidence fabrication or willful malfeasance).[8]

---

[8] Moreover, our review of the record reveals that the State established exceptions to the warrant requirement. The heroin in Gaines' pocket was seized pursuant to the search incident to arrest exception and that the gun in Gaines' yard was seized pursuant to consent exception as George had given consent to search the yard for a weapon. Thus, there was no error, fundamental or otherwise, in the admission of the evidence.

## 2. Sufficiency of Evidence

Gaines argues that the evidence was insufficient to support his conviction for Level 4 felony unlawful possession of a firearm by a serious violent felon.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder would find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Additionally, our Indiana Supreme Court has explained that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*." *Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (emphasis in original).

To convict Gaines of unlawful possession of a firearm by a serious violent felon as charged, the State was required to prove beyond a reasonable doubt that Gaines knowingly or intentionally possessed a firearm and had previously been

convicted of a serious violent felony. Gaines challenges only one element and contends that the State failed to prove that he possessed the gun found in his yard because the police officers "never saw him with a gun[.]" (Gaines' Br. 19).

[18] "[A] conviction for a possessory offense does not depend on catching a defendant red-handed." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). It is well-established that possession of an item may be either actual or constructive. *See Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997). Constructive possession, which is applicable in this case, occurs when a person has: (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. *Id.*

[19] The capability element of constructive possession is met when the State shows that the defendant is able to reduce the contraband to the defendant's personal possession. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). Additionally, "[a] trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item." *Gray*, 957 N.E.2d at 174.

[20] The intent element of constructive possession is shown if the State demonstrates the defendant's knowledge of the presence of the contraband. *Goliday,* 708 N.E.2d at 6. A defendant's knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband, or

if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of contraband. *Id.* These additional circumstances may include: "(1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns." *Gray*, 957 N.E.2d at 175.

[21] Turning to the capability element, we note that the evidence is undisputed that that the gun was found on Gaines' property. Gaines' possessory interest in the premises where the gun was found is adequate to show the capability to maintain control and dominion over the gun. *See Goliday*, 708 N.E.2d at 6 (explaining that "[p]roof of a possessory interest in the premises in which [contraband is] found is adequate to show the capability to maintain control and dominion over the items in question"). Additionally, Gaines was the only person in his yard and was seen pacing back and forth to the area of the yard where the gun was ultimately found. Thus, he had the capability to reduce the gun to his personal possession.

[22] There was also sufficient evidence to satisfy the intent element of constructive possession. Here, the evidence revealed that when the police were investigating a report that shots had been fired near Gaines' house, Gaines continually yelled at the officers to get off his street. As the officers were in the street searching for spent bullets, Gaines paced back and forth between his fence and the area of his

yard where the gun was ultimately found. Officer Taylor testified that when he looked down at the chicken-shaped flower pot, he saw the gun that was atop the dirt in the pot. Additionally, the parties stipulated that Gaines' DNA was contained on a live round that was inside the gun. Thus, Gaines' knowledge of the presence of the contraband, and his resulting intent for purposes of constructive possession, could have been inferred from evidence of additional circumstances pointing to Gaines' knowledge of the presence of contraband.

[23] From the evidence presented at trial, the judge, as trier of fact, could have reasonably determined that Gaines had the capability and intent to maintain dominion and control over the gun and that he constructively possessed the gun. Accordingly, we affirm Gaines' Level 4 felony unlawful possession of a firearm by a serious violent felon conviction.

[24] Affirmed.

Vaidik, C.J., and Barnes, Sr.J., concur.