## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2020, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Cannon Bruns & Murphy, LLC
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Samantha M. Sumcad
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph Hicks,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 20, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2168<br><br>Appeal from the Jay Circuit Court<br><br>The Honorable Brian D. Hutchison, Judge<br><br>Trial Court Cause No.<br>38C01-1810-F2-16 |

**Bailey, Judge.**

# Case Summary

[1] Joseph Hicks ("Hicks") appeals his convictions and aggregate sentence for Dealing in Methamphetamine, as a Level 2 felony,[1] Dealing in Marijuana, as a Level 6 felony,[2] and Neglect of a Dependent, as a Level 5 felony.[3] We affirm the dealing convictions and sentence and reverse the neglect conviction.

# Issues

[2] Hicks presents two issues for review:

    I.    Whether his convictions are supported by sufficient evidence; and

    II.    Whether his sentence is inappropriate.

# Facts and Procedural History

[3] On October 10, 2018, Jay County Sheriff's Deputy Tony Lennartz ("Deputy Lennartz") was dispatched to serve a summons upon Chevelle Ruhl ("Ruhl") at an address in Portland, Indiana. Deputy Lennartz learned that the summons had an incorrect address, but he proceeded to a nearby address because he believed that Ruhl could be located with her mother, Amanda Oliver ("Oliver"). Deputy Lennartz knocked at the door and Oliver answered,

---

[1] Ind. Code § 35-48-4-1.1(a)(2).

[2] I.C. § 35-48-4-10(a)(2).

[3] I.C. § 35-46-1-4(a)(1).

holding an infant.[4]  Oliver called out to Ruhl to come and get the summons. During the exchange, Deputy Lennartz detected a strong odor of marijuana. Concerned for the infant, Deputy Lennartz applied for a search warrant for the house, averring that Ruhl controlled the property.[5]

[4]  Approximately forty-five minutes later, Deputy Lennartz returned to the residence with a search warrant, accompanied by Sheriff Dwayne Ford, parole agent Dwight Albrecht, and Chief Deputy Patrick Wells ("Deputy Wells"). The officers knocked, received no response, and entered through an unlocked door.  Oliver, holding the infant, emerged from the southwest bedroom; no one else was present.

[5]  The officers executed the search warrant, focusing primarily upon the bedroom from which Oliver had emerged.  Inside that bedroom and a closet, they found an insurance policy and a bank statement with the name of Joseph Hicks. From a closet shelf, the officers retrieved a thermos.  There were "items down inside" the thermos that "appeared to be" methamphetamine and marijuana. (Tr. at 76-77, 80.)  A small pouch containing a substance was found inside Oliver's purse.  This also "appeared to be" methamphetamine.  (*Id.* at 74.)  The officers seized scales, straws, baggies, a pestle, smoking pipes, and a razor

---

[4] In the charging Information, the infant was referred to as A.A.  At the trial, Deputy Wells testified that the child was Oliver's granddaughter.  (Tr. at 56.)

[5] At trial, there was no documentary evidence produced to show who owned or leased the residence. However, officers observed that all three bedrooms appeared to be occupied.  Attorney commentary and witness references suggested that the residents may have included all or some of the following persons: Oliver, Hicks, Ruhl, Ruhl's child, Travis Stone, and Alex Blankenship.

blade. Deputy Lennartz believed that he had found a "mobile delivery kit." (*Id.* at 126). He packaged and sealed for transport the substances that he believed to be contraband.

[6] When Hicks arrived at the residence in response to a call from Oliver, he was "taken into custody." (Tr. at 108.) He then "became agitated" and demanded that the deputies "leave his property." (*Id.* at 109.) Hicks yelled out to Oliver to "keep her mouth shut." (*Id.*) Oliver was also arrested.

[7] Hicks was charged with Dealing in Methamphetamine, Dealing in Marijuana, and Neglect of a Dependent. On October 15, 2018, the State filed a Notice of Intent to call an expert witness, pursuant to Indiana Code Section 35-36-11-1 and Hicks filed a demand for in-court cross-examination. He renewed the demand on May 8, 2019 but filed a withdrawal request dated June 11, 2019. Hicks's first trial ended in a mistrial due to insufficient jurors.

[8] On August 1, 2019, Hicks was brought to trial before a jury. Relying upon Hicks's earlier withdrawal of his demand for in-court cross-examination, the State elected not to present live expert testimony. The State called two witnesses, Deputy Lennartz and Deputy Wells.[6] The jury convicted Hicks of all charges against him. On September 6, 2019, Hicks was given an aggregate sentence of twenty-two years, consisting of twenty-two years for Dealing in

---

[6] Hicks recalled Deputy Lennartz to testify as the sole defense witness. Oliver had been granted use immunity to testify as a State witness, but the grant was withdrawn, and Oliver did not testify.

Methamphetamine, a concurrent two-year sentence for Dealing in Marijuana, and a concurrent five-year sentence for Neglect of a Dependent. Hicks now appeals.

# Discussion and Decision

## Sufficiency of the Evidence

[9] Hicks contends that the State presented insufficient evidence to support any of his convictions. Our standard of review for sufficiency is clear: we will consider only the evidence most favorable to the verdicts and the reasonable inferences to be drawn therefrom. *Leonard v. State*, 73 N.E.3d 155, 160 (Ind. 2017). We will affirm a conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* We will neither reweigh the evidence nor reassess the credibility of witnesses. *Id.*

[10] To convict Hicks of Neglect of a Dependent, as charged, the State was required to establish beyond a reasonable doubt that Hicks, having the care of A.A. (who was alleged by the State to be Hicks's dependent), knowingly or intentionally placed A.A. in a situation that endangered A.A.'s life or health. I.C. § 35-46-1-4(a)(1); App. Vol. II, pg. 11. The requisite mens rea is the defendant's "subjective[ ] aware[ness] of a high probability that he placed the dependent in a dangerous situation." *Gross v. State*, 817 N.E.2d 306, 308 (Ind. Ct. App. 2004). The danger to the dependent must be "actual and appreciable." *Id.* at 309.

[11]     The State presented evidence that Oliver had been holding an infant, later identified in the charging information as A.A., at the same time that an odor of marijuana emanated from the residence. Even assuming that this situation endangered A.A.'s life or health, the State presented no evidence that Hicks ever had the care of A.A. In closing, the State urged the jury to convict Hicks because he had been a "de facto grandparent" of A.A. (Tr. at 128.) But this contention had no testimonial support. Indeed, Deputy Wells testified that "the child was seen with no one but Oliver." (*Id.* at 113.) Deputy Lennartz testified that he did not see Hicks with the child; he had seen only Oliver, Ruhl, and the infant when serving the summons and only Oliver and the infant were present at the execution of the search warrant.

[12]     The State argues that "a jury could reasonably infer Hicks was there during the first visit" because his truck was present. Appellee's Brief at 18. From Deputy Lennartz's testimony that he recognized Hicks's truck the jury could have inferred that Hicks was present and unseen when the summons was served. This inference would in turn raise the prospect that Hicks was assisting Oliver with the care of the infant. But there is no proof either that Hicks was home on that specific occasion or that he ever assisted in A.A.'s care. Speculation and mere inferences do not satisfy the State's burden of proof. *See C.T. v. State*, 28 N.E.3d 304, 309 (Ind. Ct. App. 2015) (recognizing that inference stacking without proof of a predicate fact is not constitutionally adequate proof beyond a reasonable doubt), *trans. denied*. The State did not provide sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that

Hicks had the care of A.A. and knowingly or intentionally placed A.A. in danger. This conviction must be reversed.

[13] To convict Hicks of Dealing in Methamphetamine, as charged, the State was required to establish beyond a reasonable doubt that Hicks knowingly or intentionally possessed methamphetamine, pure or adulterated, in an amount of at least ten grams, with intent to deliver the methamphetamine. I.C. § 35-48-4-1.1(a)(2); App. Vol. II, pg. 11.[7] To convict Hicks of Dealing in Marijuana, as charged, the State was required to establish beyond a reasonable doubt that Hicks knowingly or intentionally possessed marijuana, pure or adulterated, in an amount of at least thirty grams, with intent to deliver the marijuana. I.C. § 35-48-4-10(a)(2); App. Vol. II, pg. 11.[8]

---

[7] This statute provides in relevant part:

 (a) A person who:

  (1) knowingly or intentionally:

 (A) delivers; or

 (B) finances the delivery of;

methamphetamine, pure or adulterated; or

(2) possesses, with intent to:

 (A) deliver; or

 (B) finance the delivery of;

methamphetamine, pure or adulterated;

commits dealing in methamphetamine, a Level 5 felony, except as provided in subsections (b) through (e). The offense is elevated to a Level 2 felony if the amount involved is over 10 grams.

[8] Indiana Code Section 35-48-4-10(a)(2) provides: "A person who: … possesses, with intent to: … deliver … marijuana, hash oil, hashish, or salvia, pure or adulterated; commits dealing in marijuana, hash oil, hashish, or salvia, a Class A misdemeanor, except as provided in subsections (b) through (d). Subsection (b) provides that a person may be convicted of an offense under the foregoing subsection (a)(2) only if: "(1) there is

[14]     It is elementary that, to secure convictions for dealing contraband, the State bears the burden of showing that a substance is contraband. However, the State is not required in every case to elicit in-court testimony from a forensic analyst to establish the chemical composition of a substance. With regard to marijuana, an officer's training and experience in recognizing its characteristic smell and appearance may permit officer identification. Our Indiana Supreme Court has observed: "It does not take much to recognize the incriminating character of marijuana." *Gray v. State,* 957 N.E.2d 171, 175 (Ind. 2011). With regard to substances lacking such distinctiveness, analytical evidence assists the jury with reaching a reasonable conclusion as to the composition of the substance. Examples may include an officer's testimony of field test results, expert testimony, or laboratory results.[9]

---

evidence in addition to the weight of the drug that the person intended to manufacture, finance the manufacture of, deliver, or finance the delivery of the drug[.]" Pursuant to subsection (c)(2)(A), the offense of Dealing in Marijuana is elevated from a Class A misdemeanor to a Level 6 felony if the amount involved is at least 30 grams of marijuana.

[9] Here, in accordance with Indiana Code Section 35-36-11-2, et. Seq., the State introduced a Certificate of Analysis. Indiana Code Section 35-36-11-2 provides: "If the prosecuting attorney intends to introduce a laboratory report[9] as evidence in a criminal trial, the prosecuting attorney must file a notice of intent to introduce the laboratory report not later than twenty (20) days before the trial date, unless the court establishes a different time." Indiana Code Section 35-36-11-3 provides: "If the defendant wishes for the person who prepared the laboratory report to be present at the trial for cross-examination, the defendant must file a demand for cross-examination not later than ten (10) days after the defendant receives the notice filed under section 2 of this chapter, unless the court establishes a different time." If the prosecuting attorney is non-compliant, the State cannot submit the laboratory report into evidence without the testimony of the person who conducted the test and prepared the laboratory report. I.C. § 35-36-11-4. If the defendant does not file a demand, he "waives the right to confront and cross-examine the person who prepared the laboratory report." I.C. § 35-36-11-5.

Hicks notified the trial court in writing that he wished to withdraw his statutory demand. Hicks expressed no contrary intent as the parties proceeded to the second trial setting; thus, Hicks arguably waived his right to conduct in-court cross examination of a laboratory report preparer. That said, the statutory scheme is not a

[15] Here, the State introduced as substantive evidence in lieu of live testimony State's Exhibit 14, a document captioned as a Certificate of Analysis from the Indiana State Police Laboratory, Fort Wayne Regional Laboratory. Hicks made no objection to the document's admission into evidence. Evidence Rule 901(a) provides:

> To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

It appears that State's Exhibit 14 was offered pursuant to Evidence Rule 902, whereby certain public documents and public records may be offered into evidence as self-authenticating evidence.[10] We have examined the document and it does not comport with Evidence Rule 902. That said, there was no objection to its admission.

[16] Deputy Lennartz was the sponsoring witness for State's Exhibit 14. He testified that his training and experience led him to believe that the packages retrieved

---

means for lessening the State's burden of proof. *See Marley v. State*, 747 N.E.2d 1123, 1129 (Ind. 2001) (recognizing that a statute may not impermissibly shift the burden of proof as to an element of a crime because "federal due process requires the State to bear the burden of proof on every element of a criminal offense" (citing *In re Winship*, 397 U.S. 358, 364, 90 (1970)). Rather, we view the enactment by our Legislature as procedural legislation intended to promote cost savings and efficiency in the trial process.

[10] Pursuant to this Rule, a self-authenticating document may be a domestic public document sealed and signed, Rule 902(1), a domestic public document signed and certified, Rule 902(2), a foreign public document, Rule 902(3), a certified copy of a public record, Rule 902(4), an official publication, Rule 902(5), a newspaper or periodical, Rule 902(6), a trade inscription, Rule 902(7), a notarized document, Rule 902(8), commercial paper, Rule 902(9), a document declared by statute to be presumptively genuine or authentic, Rule 902(10), a certified domestic record of a regularly conducted activity, Rule 902(11), or a certified foreign record of a regularly conducted activity, Rule 902(12).

from inside the thermos contained crystal methamphetamine and marijuana. He had anticipated having those items analyzed following the seizure. According to Deputy Lennartz, he had placed the bags from the thermos in larger packaging and sealed the larger package for placement in an evidence locker and eventual transport to the "Fort Wayne State Lab." (*Id.*) Deputy Lennartz had not transported the materials, but offered that "typically, the Chief Deputy does the transport." (*Id.* at 81.) He testified "there's some markings" related to transport and he had "then received this stuff back" and it had been kept "in the evidence area at the Sheriff's Department." (*Id.*) Although lacking some detail, Deputy Lennartz's testimony strongly suggests that the seized items remained in an undisturbed condition in official custody.[11]

[17] Prior to the admission of State's Exhibit 14, Deputy Lennartz was shown State's Exhibit 10 and testified that it had "the look and smell of unburnt marijuana." (Tr. at 77.) Deputy Lennartz stated that he was familiar with the appearance and smell of marijuana, because of his training and experience. Given Deputy Lennartz's background, experience, and training, he provided adequate identification testimony to permit a reasonable jury to conclude that the deputies had seized marijuana. Next, we consider whether the State established that the deputies also seized methamphetamine.

---

[11] To establish a proper chain of custody, the State must give reasonable assurances that the evidence remained in an undisturbed condition. *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002). However, the State need not establish a perfect chain of custody, and once the State "strongly suggests" the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to admissibility. *Id.*

[18]  Deputy Lennartz was asked to examine State's Exhibit 12, a physical exhibit. He testified that he recognized that particular exhibit as an "item found during the search at this State Road 67 residence" and "it appears to be methamphetamine, crystal methamphetamine." (*Id.* at 80.) Because of Hicks's waiver of cross-examination, the State was not required to call the preparer of State's Exhibit 14 as a witness and Deputy Lennartz was asked to explain its contents.

> State:  And I'm going to show you what's been marked as State's exhibit number 14. …  These items were analyzed – these three individual items and the result indicates what with regard to State's exhibit number 12?
>
> Deputy Lennartz:  Net weight – it was found to contain methamphetamine, a controlled substance.  Net weight thirteen point nine three grams. …
>
> State:  And State's exhibit number 10 the – what the items you believed to be marijuana.  What was or that [sic] you preliminary [sic] identified [as] marijuana, what was the lab report – what did that say? … Was it found to be marijuana?
>
> Deputy Lennartz:  Yes. …
>
> State:  Okay.  And what was the weight on – on State's exhibit number 10?
>
> Deputy Lennartz: Two point two six grams [and] seventy five point eight seven grams. …

State: And State's exhibit number 8, this would've been the little pouch here in Amanda Oliver's purse. That was item number (inaudible) report. What was that?

Deputy Lennartz: It was found to contain methamphetamine, a controlled substance. Net weight of point six three grams.

(Tr. at 81-84.)

[19] The evidence is sufficient to permit the jury to draw an inference that the seized items were those submitted for analysis and found to be contraband.

[20] We next consider whether the State established that Hicks possessed the contraband. The State proceeded on the theory that Hicks had constructive possession. Possession of contraband may be either actual or constructive. *See Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004). A person actually possesses an item when he has direct physical control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). But when the State cannot show actual possession, a conviction for possessing contraband may rest upon proof of constructive possession. *Id.* A person constructively possesses something when the person has the capability to maintain dominion and control over the item and the intent to maintain dominion and control over it. *Id.*

[21] When a possessory interest is not exclusive, the State must show additional circumstances as to the defendant's knowledge of the presence and the nature of the item. *Id.* Some possible, non-exclusive examples include: (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making

furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns. *Id.* at 175. "[F]inding contraband hidden from plain view on premises in which a defendant has a nonexclusive possessory interest when the defendant was not even present will not, without more, support a conviction on a theory of constructive possession." *Id.*

[22] The deputies testified that they had found a bank statement and insurance policy bearing the name of Joseph Hicks, lying upon a bedroom dresser and a closet shelf, respectively. The insurance policy was found in close proximity to the thermos. This discovery, together with Hicks's insistence that officers leave "his" premises, suggested that Hicks resided there and had some control. Hicks also demanded that Oliver remain quiet. The State presented sufficient evidence from which the jury could find that Hicks constructively possessed contraband.

[23] When a possessory offense is elevated based upon intent to deliver:

> the State must prove that appellant had the intent to deliver in order to gain a conviction of possession of [contraband] with intent to deliver. Because intent is a mental state, and because it is often the case that an actor does not verbally express intent, the trier of fact must usually resort to reasonable inferences based on examination of the surrounding circumstances to determine the existence of the requisite intent.

*Chandler v. State*, 581 N.E.2d 1233, 1237 (Ind. 1991).

The State presented evidence from which the jury could reasonably determine that Hicks had intent to deliver. That is, the deputies found the contraband in packaging as if it were to be offered for individual sale, they found scales, and they found something that appeared to be a "mobile delivery kit." (Tr. at 126.)

# Sentence

Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by a trial court. *Sanders v. State*, 71 N.E.3d 839, 843 (Ind. Ct. App. 2017), *trans. denied*. This appellate authority is embodied in Indiana Appellate Rule 7(B). *Id.* Under 7(B), the appellant must demonstrate that his sentence is inappropriate in light of the nature of his offense and his character. *Id.* (citing Ind. Appellate Rule 7(B)). In these instances, deference to the trial courts "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

The Indiana Supreme Court has explained that the principal role of appellate review is an attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The question is not whether another sentence is more appropriate, but whether the

sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).

[27] A defendant convicted of a Level 2 felony is subject to a sentencing range of ten to thirty years, with seventeen and one-half years as the advisory sentence. I.C. § 35-50-2-4.5. A defendant convicted of a Level 6 felony is subject to a sentencing range of six months to two and one-half years, with an advisory sentence of one year. I.C. § 35-50-2-7(b). For his crimes, Hicks received concurrent sentences of twenty-two years and two years. He contends that the nature of the offenses and his character do not support his aggregate sentence. In particular, he emphasizes that possession is not a crime of violence and he has regularly been gainfully employed to provide for his dependents.

[28] First, we look to the nature of the offenses. As he observes, Hicks did not commit crimes of violence by possessing contraband. However, he was not sentenced for a violent crime. He possessed 13.92 grams of methamphetamine and 75.87 grams of marijuana, significantly more than that necessary to support the elevation of the offenses.

[29] Next, we consider the defendant's character. Hicks has a history of employment. He also has a history of substance abuse and probation violations. Hughes was twice adjudicated a delinquent, for possessing marijuana and committing what would be theft if committed by an adult. He has an extensive criminal history consisting of eight prior convictions as an adult. In addition to six misdemeanors, Hicks has felony convictions for

Battery with bodily injury and Criminal Recklessness while armed with a deadly weapon. While out on bond in the instant case, Hicks was charged with Domestic Battery causing serious bodily injury and Possession of Methamphetamine.

[30] Hicks has not presented compelling evidence that portrays in a positive light the nature of the offenses or his character. Absent such evidence, we are unpersuaded that his sentence is inappropriate.

# Conclusion

[31] There is a lack of constitutionally adequate proof beyond a reasonable doubt to support the conviction for Neglect of a Dependent. However, the State provided sufficient evidence that Hicks committed the charged offenses of Dealing in Methamphetamine and Dealing in Marijuana. His aggregate sentence for the dealing convictions is not inappropriate. We remand with instructions to the trial court to vacate the conviction for Neglect of a Dependent and the concurrent five-year sentence.

[32] Affirmed in part; reversed in part; and remanded with instructions.

Crone, J., and Altice, J., concur.