

FILED

Oct 11 2023, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard Pigott,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 11, 2023

Court of Appeals Case No.
22A-CR-2999

Appeal from the
Huntington Superior Court

The Honorable
Amy C. Richison, Magistrate

Trial Court Cause No.
35D01-2202-F5-63

**Opinion by Judge Vaidik**
Judge Tavitas concurs.
Judge Foley dissents with separate opinion.

**Vaidik, Judge.**

# Case Summary

Richard Lynell Pigott was convicted of Level 5 felony dealing in methamphetamine (possession with intent to deliver) after he was found with methamphetamine residue on a digital scale. He appeals, arguing there is insufficient evidence that he (1) possessed the methamphetamine or (2) intended to deliver it. We find sufficient evidence that Pigott possessed methamphetamine but insufficient evidence that he intended to deliver it. We therefore reverse Pigott's conviction for Level 5 felony dealing in methamphetamine and remand to the trial court with instructions to enter judgment of conviction for Level 6 felony possession of methamphetamine and resentence Pigott accordingly.[1]

# Facts and Procedural History

Around 2:50 a.m. on December 4, 2021, several police officers were at a truck stop in Huntington when they saw the driver and front-seat passenger of an SUV "acting very suspicious," both "trying to keep an eye on [the officers], but also at the same time hide their face[s]." Tr. Vol. II p. 150. One officer recognized the passenger, believed he had an arrest warrant, and called dispatch

---

[1] Pigott also argues the sentence imposed by the trial court is inappropriate, but because we remand for resentencing, we do not address this argument.

to confirm. Before dispatch could do so, the SUV sped out of the parking lot. After confirming the warrant, officers caught up to the SUV and pulled it over. Officers approached the SUV and ordered the front-seat passenger to exit. As he did, the officers smelled the odor of raw marijuana coming from the SUV. The officers ordered the driver to exit the SUV and learned he also had a warrant.

[3] Officers then saw Pigott in the back seat "kind of crouching down, hiding his face, and talking on the phone." *Id.* at 153. There was a backpack on the seat next to Pigott, and Pigott said it belonged to him. Officers ordered Pigott to exit and then searched the SUV and Pigott's backpack. Inside the backpack were a digital scale lined with methamphetamine residue, over $2,600 in cash, spoons, a jar of marijuana, and Pigott's wallet. Pigott told police that the marijuana and cash belonged to him but claimed the scale "shouldn't be in there" and was not his. *Id.* at 169. When police asked Pigott about the residue on the scale, his behavior changed. He "immediately lessened his eye contact," "his voice quivered frequently," and "he stumbled on his words." *Id.* at 170. Pigott claimed he earned the cash working for a tree company, but he had never worked for the company. Police also seized and searched Pigott's phone, and they found Facebook Messenger conversations indicating that Pigott had been selling methamphetamine and heroin to various people between about 5:30 p.m. on December 3 and 2:35 a.m. on December 4. Ex. 29.

[4] The State charged Pigott with Level 5 felony dealing in methamphetamine (possession with intent to deliver), Level 6 felony possession of methamphetamine, and Class B misdemeanor possession of marijuana. A jury

trial was held in November 2022. Two police officers testified that the smallest drug amount that is bought and sold is called a "point," which is 0.1 gram. Tr. Vol. II pp. 148-49, 230. A forensic scientist from the state crime lab testified that he scraped some of the methamphetamine residue off the digital scale for testing, that he left the rest of the residue on the scale, and that the weight of the residue he scraped off for testing was too small to be measured, meaning it was less than 0.01 gram.

[5] The jury found Pigott guilty as charged. The trial court merged the methamphetamine-possession count into the methamphetamine-dealing count to avoid double jeopardy and entered judgment of conviction on the dealing and possession-of-marijuana counts. The court imposed concurrent sentences of four years for dealing in methamphetamine and sixty days for possession of marijuana.

[6] Pigott now appeals.

## Discussion and Decision

[7] Pigott contends the evidence is insufficient to support his conviction for Level 5 felony dealing in methamphetamine.[2] When reviewing sufficiency-of-the-evidence claims, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We will only

---

[2] Pigott does not challenge his conviction for possession of marijuana.

consider the evidence supporting the judgment and any reasonable inferences that can be drawn from the evidence. *Id.* A conviction will be affirmed if there is substantial evidence of probative value to support each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[8] Dealing in methamphetamine is governed by Indiana Code section 35-48-4-1.1, which provides, in relevant part:

> (a) A person who:
>
>> (1) knowingly or intentionally:
>>
>>> (A) delivers; or
>>>
>>> (B) finances the delivery of;
>>
>> methamphetamine, pure or adulterated; or
>>
>> (2) possesses, with intent to:
>>
>>> (A) deliver; or
>>>
>>> (B) finance the delivery of;
>>
>> methamphetamine, pure or adulterated;
>>
>> commits dealing in methamphetamine, a Level 5 felony[.]

The State charged Pigott under subsection (a)(2)(A), meaning it had to prove beyond a reasonable doubt that Pigott knowingly or intentionally possessed methamphetamine with intent to deliver. Appellant's App. Vol. II p. 86. Pigott argues that he did not possess methamphetamine and that, even if he did, he did not intend to deliver it.[3]

[9] As an initial matter, there is no dispute that the possession at issue in this case is the possession of the methamphetamine residue found on the digital scale. The State did not argue at trial and does not argue on appeal that the possession element can be satisfied by the evidence that Pigott possessed and sold larger amounts of methamphetamine earlier in the night. To the contrary, during its closing argument, the State asserted, "So the methamphetamine that was on that scale was part of his intent to deliver drugs to people in our community. You should be firmly convinced that **that was the Defendant's intent with the methamphetamine that was found on the scale in his possession**." Tr. Vol. III p. 2 (emphasis added). If the evidence of the earlier drug-dealing activity had been the basis for the prosecution, the State presumably would have charged

---

[3] Pigott also contends that the lab scientist "presumably" removed "as much of the residue as possible, if not all of it," from the digital scale and that the State "has thus permanently altered the residue evidence in this matter, such that there is no way for Pigott to ever have independent laboratory testing conducted." Appellant's Br. pp. 14-15. He continues, "This essentially equates to a spoliation of evidence argument and one that Pigott would ask this Court to hold the State accountable for by finding that due to the State's actions, Pigott's conviction for Count I must be reversed pursuant to the holding in [*Cahoon v. Cummings*, 734 N.E.2d 535 (Ind. 2000)]." *Id.* at 15. Pigott doesn't cite anything in the record to support this claim, and the lab scientist testified that when he scraped the scale for testing, he "got as much as [he] was able to while still being able to leave some of the residue behind[.]" Tr. Vol. II p. 206. Moreover, Pigott gives no indication he made this spoliation argument in the trial court or that he asked to conduct independent testing, and he cites no authority applying civil spoliation doctrine in the criminal context. For all these reasons, Pigott waived this argument.

Pigott with actual delivery under subsection (a)(1) of the statute rather than with possession with intent to deliver under subsection (a)(2). The State likely chose not to do so because it didn't have the alleged drugs or buyers. In any event, the only issues before us now are whether Pigott possessed the methamphetamine residue on the scale and, if so, whether he intended to deliver that methamphetamine.[4]

# I. Possession

[10] Possession can be actual or constructive. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). Actual possession occurs when the person has direct physical control over the item. *Id.* Pigott contends that because the methamphetamine was in a backpack on the seat next to him, he was not in actual possession of it. The State does not dispute this point.

[11] Pigott also argues he was not in constructive possession of the methamphetamine. A person constructively possesses an item when the person has both the capability and intent to maintain dominion and control over it. *Id.* Pigott concedes he was capable of maintaining dominion and control over the methamphetamine but contends there is insufficient evidence he intended to do

---

[4] The dissent takes the position (not advanced by the State) that a person can be convicted of possession with intent to deliver if the person possesses some tiny, unmarketable amount of a drug but has the general intent to acquire and sell a larger amount of the drug at some unknown time in the future. This sounds eerily similar to the plot of the 2002 Steven Spielberg/Tom Cruise science-fiction film "Minority Report," which depicted a "pre-crime" law-enforcement system in which people are arrested and incarcerated for crimes they have not yet committed. We are confident this is not what our legislature had in mind when drafting the possession-with-intent-to-deliver statutes.

so. We disagree. The intent element can be satisfied by demonstrating a defendant's knowledge of the presence and nature of the item, which can be shown by, among other things, the item's proximity to the defendant and the mingling of items with other items the defendant owns. *Id.* at 174-75. Here, the methamphetamine was in the backpack right next to Pigott, and the backpack contained several other items belonging to Pigott, including his wallet. Also, Pigott acted nervous when asked about the scale and the residue. This evidence is sufficient to prove constructive possession of the methamphetamine.

## II. Intent to Deliver

[12] Pigott contends that even if he possessed the methamphetamine residue, there is insufficient evidence that he intended to deliver it. On this point, we agree with Pigott. As he notes, the State's evidence established that the smallest drug amount that is bought and sold is 0.1 gram and that the weight of the residue on the digital scale was much lower than that. The State doesn't direct us to any evidence that Pigott intended to sell, or to try to sell, the minuscule amount of methamphetamine found on the scale.[5]

---

[5] The State repeatedly cites the lab scientist's testimony that the digital scale had methamphetamine "caked onto it." Tr. Vol. II p. 205. To the extent the State hopes to create the impression that there was a significant or sellable amount of methamphetamine on the scale, the photos of the scale that were admitted into evidence show otherwise. *See* Exs. 4, 7, 9. And the scientist's full description of the residue was as follows:

> [W]hen I received the item it just had a powdery material kind of caked onto it or lined onto it similar to if you had a bag of flour that -- and then you emptied that bag of flower [sic] into a bowl, you're still going to kind of get that white kind of -- that's kind of lining the bag of it.

Tr. Vol. II p. 205.

[13] The State cites several possession-with-intent-to-deliver cases where convictions were affirmed, but all of them involved measurable, sellable quantities of drugs. *See Eaton v. State*, 889 N.E.2d 297 (Ind. 2008) (three grams or more of cocaine), *reh'g denied*; *Adamov v. State*, 536 N.E.2d 281 (Ind. 1989) (more than three grams of heroin); *Mason v. State*, 532 N.E.2d 1169 (Ind. 1989) (more than three grams of heroin); *Durstock v. State*, 113 N.E.3d 1272 (Ind. Ct. App. 2018) (six grams of fentanyl), *trans. denied*.

[14] Much of the State's intent-to-deliver argument focuses on the evidence that Pigott was dealing drugs in the hours before the traffic stop: the Facebook messages on his phone and his possession of the digital scale, spoons, and a large amount of cash. But this evidence only shows, at most, that Pigott had dealt drugs in the recent past. Pigott was not charged with delivering drugs under subsection (a)(1) of Section 35-48-4-1.1. He was charged with possessing the methamphetamine residue on the scale with intent to deliver it under subsection (a)(2) of the statute. Again, there is no evidence whatsoever that Pigott was in the business of selling drug residue or that he was going to try to sell this specific residue, and the State's own evidence shows that there is no market for methamphetamine residue.

[15] In sum, the issue here isn't whether Pigott dealt drugs earlier that night. The issue is whether the State proved that Pigott intended to deal the methamphetamine residue found on the digital scale. Not only did the State fail to prove that, but its own evidence supported the opposite conclusion. Therefore, we reverse Pigott's conviction for Level 5 felony dealing in

methamphetamine. However, because there is evidence that Pigott possessed the residue, we remand the case to the trial court with instructions to enter judgment of conviction for Level 6 felony possession of methamphetamine and to resentence Pigott accordingly.

[16] Reversed and remanded.

Tavitas, J., concurs.

Foley, J., dissents with separate opinion.

**Foley, Judge, dissent.**

[17] I respectfully dissent from Part II of the majority's opinion. The majority concludes that the evidence was insufficient to prove that Pigott intended to deal the methamphetamine residue found on the digital scale. Inherent in the majority's holding is that the possession with intent to deliver statute requires a defendant to intend to deliver a minimal amount of methamphetamine and the specific methamphetamine found in the defendant's possession. I view the majority's holding to add language to the statute that does not exist.

[18] To convict Pigott of dealing in methamphetamine as a Level 5 felony, the State was required to prove that he possessed methamphetamine with the intent to deliver methamphetamine. Ind. Code § 35-48-4-1.1(a)(2). "Intent, being a mental state, can only be established by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn therefrom." *Richardson v. State*, 856 N.E.2d 1222, 1227 (Ind. Ct. App. 2006), *trans. denied*. Circumstantial evidence showing possession with intent to deliver may support a conviction. *Id.* The statute does require evidence in addition to the weight of the drug to prove the elements of intent to deal.[6] However, there is no requirement of proof of a specific amount or minimum

---

[6]"A person may be convicted of an offense under subsection (a)(2) only if: (1) there is evidence in addition to the weight of the drug that the person intended to deliver or finance the delivery of the drug [.]" I.C. 35-48-4-1.1(b)(1).

amount of methamphetamine a defendant must possess to be convicted. *See* I.C. § 35-48-4-1.1(a)(2).

[19] Thus, as there is no statutory minimum amount of methamphetamine required to prove the elements of the crime for which Pigott was convicted, we must consider the minimal weight of the methamphetamine in conjunction with the other evidence of Pigott's intent to deal. When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the fact-finder's decision. *Parks v. State*, 113 N.E.3d 269, 272 (Ind. Ct. App. 2018).

> It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision.

*Id*. at 272–73 (internal citations omitted).

[20] Possession of a small quantity of a drug does not mean that the intent to deliver cannot be established, if there is other evidence of intent to deliver. Here, the evidence demonstrated that Pigott had possessed and sold methamphetamine to numerous individuals in the hours before he was arrested, and Pigott's phone

contained a detailed log of his activities and drug transactions on Facebook Messenger. In fact, the messages to set up deals went all the way until 2:35 a.m., and it appeared that Pigott was still in the process of setting up prospective deals at the time of the last message. The evidence clearly indicated that the methamphetamine residue found on the scale had been part of the dealing Pigott engaged in prior to the traffic stop and could or would be commingled with additional methamphetamine for the deals Pigott had scheduled in the hours after the stop. Further, his possession of the digital scale and over $2,600 in cash, his change in demeanor when police asked him about his digital scale, his statement that the scale "shouldn't be there," and his dishonest explanation for how he obtained the large amount of cash all support the conclusion that Pigott had the intent to deliver methamphetamine despite only possessing the methamphetamine residue on the scale at the time of his arrest. Tr. Vol. II pp. 169–70. In determining whether Pigott committed the offense charged, the jury was free to weigh and consider the minimal amount of methamphetamine found in Pigott's possession along with the other evidence of his intent to deliver methamphetamine. Our standard of review prevents us from reweighing the evidence or judging the credibility of the witnesses.

[21] Moreover, in finding that the State was required to prove that Pigott intended to deliver the specific residue found on the scale in order to be convicted, the majority inserts language into statute that is not present. Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the

legislature as expressed in the plain language of its statutes. *Kelley v. State*, 166 N.E.3d 936, 937 (Ind. Ct. App. 2021). When a statute is clear and unambiguous, we apply the rules of statutory construction and interpret statutory language in its plain, ordinary, and usual sense. *Id*. We presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Rodriguez v. State*, 129 N.E.3d 789, 793 (Ind. 2019).

[22] The plain language of the statute requires that a defendant possess methamphetamine, with no minimum amount necessary, with the intent to deliver methamphetamine. If our legislature had intended to exclude small quantities of methamphetamine from forming the basis of criminal liability under Indiana Code section 35-48-4-1.1(a)(2) or require a defendant specifically intend to deliver the methamphetamine in his possession, it could have elected to do so. Other subsections of the same statute contain requirements of minimum quantities necessary to elevate the offense to a higher level of felony. *See, e.g.,* I.C. § 35-48-4-1.1(c) ("The offense is a Level 4 felony if: (1) the amount of the drug involved is at least one (1) gram but less than five (5) grams; or (2) the amount of the drug involved is less than one (1) gram and an enhancing circumstance applies."). Because the statute does not contain language requiring a minimum amount of methamphetamine, the plain language of the statue required the State to prove that a defendant possess some quantity of methamphetamine with the intent to deliver methamphetamine.

[23] I conclude that the State presented sufficient evidence to support Pigott's conviction for dealing in methamphetamine and would affirm his conviction.